SUE S. LEVIN, FORMERLY SUE S. WILLIAMS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levin v. Commissioner
Docket No. 35909-85.
United States Tax Court
T.C. Memo 1987-67; 1987 Tax Ct. Memo LEXIS 63; 53 T.C.M. (CCH) 6; T.C.M. (RIA) 87067; February 3, 1987. E. Gary Work, Jr., for the petitioner. Marsha R. Yowell, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency dated June 27, 1985, respondent determined a deficiency of income tax for the calendar year 1977 against petitioner and her then husband, J. Curtis Williams, Jr. in the amount of $78,178.83, together with an *64 addition to tax under section 6653(a) [1] in the amount of $3,908.94. Respondent further determined that part of the determined underpayment of tax, in the amount of $76,826.37, was attributable to tax-motivated transactions, within the meaning of section 6621(d), calling for application of the elevated rate of interest on such amount as provided by that section. Although respondent's statutory notice made a number of adjustments to the reported income of petitioner and J. Curtis Williams, Jr., after concessions by both sides, the only issue which we must determine is whether petitioner is entitled to relief under the provisions of section 6013(e) from the underpayment of tax, and the additional interest rate provided by section 6621(d), resulting from the disallowance of a claimed distributive share of partnership loss in the year 1977 of $137,010.54 from a partnership known as Craig, Ltd. Part of the evidence herein consisted of a stipulation of facts and exhibits, *65 and such stipulation, together with the accompanying exhibits, are incorporated herein by this reference. FINDINGS OF FACT At the time of filing her petition herein, petitioner was a resident of Pensacola, Florida. For the calendar year 1977, petitioner filed a joint income tax return with her then husband, J. Curtis Williams, Jr. (hereinafter "Williams"). Petitioner and Williams were married in 1964 and lived together until about May 1977, when they separated. They were divorced on April 25, 1978. During the marriage, Williams was a practicing medical doctor, and derived income from this source, as well as from various investments which he made from time to time. It was his practice to give petitioner a monthly allowance, for the purpose of paying all household bills and for the maintenance of himself, petitioner and their children (there were two in 1977). This household allowance, which petitioner handled, was in the range of $3,000 per month during the latter part of their marriage. In addition, for part of the period of the marriage, petitioner operated a children's retail store, was responsible for the books and records of that operation, and handled considerable *66 sums of money. Although petitioner and Williams separated in May of 1977, they reunited temporarily in the fall of that year and continued to live together until about the end of the year, when they separated again. During this period, Williams made an investment in a limited partnership known as Craig, Ltd. The actual amount of cash invested in this venture was $40,000. Craig, Ltd. purported to be a coal mining partnership. The joint return of petitioner and Williams for 1977 was signed on or about May 8, 1978, and was received by respondent on May 11, 1978. At that time, petitioner and Williams had just been divorced, and were not in direct communication with each other. Prior to petitioner's signing the return, she asked her divorce lawyer about it, and he advised her to go and see what the return said. Petitioner accordingly contacted a Mr. McAbee, who at that time was the tax accountant for both herself and Williams, and went to see him. Mr. McAbee showed petitioner the return. Petitioner did not examine the return nor look at any part of it except the signature page which indicated that there was an overpayment of tax of $23,274.14. Petitioner understood that she *67 would be entitled to receive one-half of this overpayment as a refund of tax, and with this understanding she signed the return. The return contained items of income and deduction with respect to the children's shop, which was petitioner's, as well as other items of income and deduction pertaining to income originating with Williams. Contrary to her expectations, petitioner did not receive one-half of the $23,274.14 overpayment disclosed by the 1977 joint return. Instead, she found that the entire amount had been applied by Williams as a credit toward his individual 1978 estimated income tax liability. She accordingly returned to the Circuit Court for Escambia County, Florida, the court which had granted her divorce decree and which had retained jurisdiction over the matter, and sought, inter alia, to recover this amount from Williams. The divorce court agreed with her position, finding that she had executed the 1977 joint income tax return with the understanding that she was entitled to one-half of the claimed overpayment, and awarded a judgment in her favor and against Williams for the amount of $11,637.07, in addition to making other modifications to the alimony and support *68 provisions of the divorce decree. Petitioner received this payment in 1981. The 1977 joint return claimed a net loss from the Craig, Ltd. partnership in the amount of $137,011. In respondent's statutory notice of deficiency, this entire amount was disallowed. Respondent has now conceded, however, that a cash investment of $40,000 in this venture was allowable, thus reducing the net disallowance to $97,011. As reported in the 1977 joint income tax return, the Craig, Ltd. investment resulted in an underpayment attributable to a tax-motivated transaction in the amount of $50,814.70, to which the elevated interest rates provided by section 6621(d) are applicable. [2] The claimed loss with respect to Craig, Ltd. for 1977 contributed to the claimed overpayment of tax for 1977, as disclosed by the joint return for that year, and as to which petitioner ultimately received one-half. OPINION As the result of the agreement of the parties on other issues, the only matter which we must decide here is whether petitioner is relieved from liability under the provisions of section 6013(e) with respect to an underpayment of tax resulting from the overstatement *69 of a claimed loss deduction with respect to a distributive share of partnership loss from an entity known as Craig, Ltd., as reported in the joint return for 1977. The parties are in agreement that the amount of underpayment with respect to this item is $50,814.70, and that the provisions of section 6621(d) are applicable. As relevant herein, section 6013(e) provides as follows: (e) Spouse Relieved of Liability in Certain Cases. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such *70 taxable year to the extent such liability is attributable to such substantial understatement. [3]
As the requirements of section 6013(e)(1) are conjunctive rather than alternative, a failure to meet any of the requirements prevents a spouse from qualifying for relief from liability under section 6013(e). Respondent herein has conceded that petitioner has met the first two elements of section 6013(e)(1). Petitioner *71 therefore has the burden of proving the remaining two elements. , affg. in part . The first of the elements that petitioner must establish is that in signing the return she did not know, and had no reason to know, that a substantial understatement of tax would result from the claimed loss from Craig, Ltd., as disclosed by the return. The standard to be applied in determining whether a taxpayer "had no reason to know" is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know or be on notice of facts giving rise to the substantial understatement. ;; . Petitioner had the burden of proof on this point, ; Rule 142(a), and we hold that she has failed to carry her necessary burden of proof to convince us that she neither knew nor had reason to know of the Craig, Ltd. *72 loss deduction producing the underpayment of tax in issue before us. Petitioner testified at trial, and although she did not flatly deny that she had never been told about the Craig, Ltd. investment made by Williams, she said that if she had been told about it it had entirely escaped her attention and memory. On the other hand, Williams also testified at trial herein, and his testimony was fairly clear: that he had made the Craig, Ltd. investment in the fall of 1977, when he and petitioner were briefly reunited; that the investment was made for the purpose of providing future retirement benefits in some undisclosed fashion; and that he had discussed the matter with petitioner. We are thus left with two conflicting lines of testimony and, on balance, we conclude that petitioner has failed to carry her necessary burden of persuasion. We do not mean to imply that petitioner is deemed to have known all the intricacies of the Craig, Ltd. partnership investment, nor how the very large loss claimed on the return was produced, nor that the Craig, Ltd. investment was a "tax motivated transaction" within the meaning of section 6621(d). Petitioner is not necessarily chargeable with actual *73 knowledge of all these matters, cf. , but we think it is equally true that a spouse cannot obtain the benefits of section 6013(e) by simply turning a blind eye to -- by preferring not to know of -- facts fully disclosed on a return, of such a large nature as would reasonably put such spouse on notice that further inquiry would need to be made. See ; . We think that petitioner here had a duty to inquiry with respect to the large deduction in the 1977 return resulting from the Craig, Ltd. investment, which was fully disclosed on the face of the return. We do not think that she can escape the responsibilities which she undertook in signing the 1977 joint return by simply ignoring the contents thereof. See and compare ; . With respect to the fourth item of section 6013(e)(1), we likewise hold that petitioner has failed to carry her burden of proof to persuade us *74 that it would be inequitable, under all the circumstances of this case, to hold that she should be liable for the underpayment of tax in issue here. This is not a case of omitted income, where it has been shown that the spouse had no knowledge of the omission nor any reason to know about it. To the contrary, as we have previously discussed, the Craig, Ltd. investment and the claimed loss flowing therefrom was clearly disclosed in the return, and we think that its size was such that petitioner had some duty to inquire about it. Furthermore, it is apparent from this record that there was a definite benefit which accrued to petitioner as the result of the claimed Craig, Ltd. deduction. This item obviously entered into the computation of the overpayment of tax of over $23,000 which was shown on the 1977 joint return. Petitioner signed that return with the clear understanding that she would be entitled to receive one-half of that claimed overpayment of tax. When it was not forthcoming, she went back to the divorce court, litigated the matter and prevailed, securing a judgment in her favor which included her claimed one-half of the overpayment. She felt she was entitled to it, she fought *75 for it, and she got it. Without the claimed deduction from Craig, Ltd., there would have been no overpayment of tax shown on the 1977 return. Under these circumstances, it is clear to us that petitioner did benefit from the claimed deduction. In sum, we hold that petitioner has failed to carry her necessary burden of proof to show that she qualifies for relief under section 6013(e), because of her failure to meet the standards of section 6013(e)(1)(C) and (D). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. So stipulated by the parties.↩
3. After the tax year here in issue, sec. 6013(e) was amended to read as above, but was made retroactive to all taxable years to which the Internal Revenue Code of 1954 applies. Pub. L. 91-679, sec. 1, 84 Stat. 2063. Prior to its amendment, sec. 6013(e) explicitly required that we consider "whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income." Although sec. 6013(e), as amended, no longer specifically requires us to determine whether a spouse significantly benefited, this factor is still to be taken into account in determining whether it is inequitable to hold a spouse liable. See H. Rept. 98-432 (Part 2) 1501, 1502 (March 5, 1984); .↩