JOAN K. FLYNN, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 35109-83.          Filed September 20, 1989.

*Santo Agati,* for the petitioner.
*Daniel Morman,* for the respondent.

RUWE, *Judge:* Respondent determined deficiencies in
petitioner's Federal income taxes and additions to tax as
follows:

| Year | Deficiency | Additions to tax sec. 6653(a) [1] |
|------|-----------|-----------------------------------|
| 1974 | $24,026 | $1,201 |
| 1975 | 6,821 | 341 |
| 1976 | 6,517 | 326 |

Respondent has conceded that petitioner is not liable for the additions to tax under section 6653(a). Petitioner does not contest the accuracy of respondent's underlying deficiency determinations. The sole issue for decision is whether petitioner qualifies for relief from liability as an "innocent spouse" under section 6013(e).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner resided in Kingston, Pennsylvania, when she filed her petition in this case. Petitioner and Martin R. Flynn (Mr. Flynn) were married in 1959. Petitioner and Mr. Flynn filed joint Federal income tax returns for taxable years 1974, 1975, and 1976. They were divorced in June 1982.

During the years in issue, Mr. Flynn was a 50-percent shareholder in Tom Flynn Corp. (hereinafter TFC) and River Corp. (hereinafter River), both subchapter S corporations. The adjustments at issue in this case result from respondent's disallowance of costs of goods sold and deductions claimed by TFC and River.

TFC was a construction company formed to repair homes damaged during the 1972 flood caused by hurricane Agnes. The homes TFC repaired were located in restricted flood areas in Luzerne County, Pennsylvania. For taxable year ended July 31, 1974, respondent disallowed $103,599.43 of TFC's claimed cost of goods sold. Of the $103,599.43 amount respondent disallowed, $100,000 had been recorded by TFC in its books and records as a purchase of a certificate of deposit. TFC also claimed the following deduc-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

tions for taxable year ended July 31, 1974, which respondent disallowed: an insurance expense deduction of $3,282; a legal expense deduction of $374.70; a professional fees expense deduction of $2,386.85; an advertising expense deduction of $940; and a travel expense deduction of $16,382.10. For taxable year ended July 31, 1975, TFC claimed a $1,078.94 travel expense deduction which respondent disallowed.

Respondent determined that Mr. Flynn's pro rata share of income from TFC for 1974 was $68,869, rather than $5,386 as reported, and that his share of the loss from TFC for 1975 was $1,112, rather than $1,652 as reported.

The nature of River's business is not disclosed in the record, and River's Forms 1120S (U.S. Small Business Corporation Income Tax Return) for the years in issue are not contained in the record. Petitioner was familiar with the name "River Corporation," but she was not familiar with the nature of River's business. For taxable year ended March 31, 1975, River claimed and respondent disallowed the following deductions: dues and subscriptions expense of $618.25; professional fees expense of $1,450; insurance expense deduction of $187.50; and a travel expense of $15,581.40. Respondent also disallowed an overstatement of cost of goods sold of $182.85. For River's taxable year ended March 31, 1976, respondent disallowed an insurance expense deduction of $1,623.13 and a travel expense deduction of $15,980.25. Respondent also disallowed an overstatement of cost of goods sold of $11,962.62.

Respondent determined that Mr. Flynn's pro rata share of income from River for 1975 was $9,465, rather than $455 as reported, and that his share of income from River for 1976 was $4,592, rather than the reported loss of $10,191.

Petitioner did not participate in the operations of TFC or River, and she did not render services to either of the corporations. Although petitioner was aware that TFC was a successful construction company, she had no knowledge of the internal affairs of TFC or River.

In addition to his involvement with TFC and River, Mr. Flynn owned Econa Corp. and Control Device Corp. Petitioner was aware that Mr. Flynn owned these two corpora-

tions. Mr. Flynn also ran the Tom Flynn Fuel Co., a company owned by his father. Although he ran the Tom Flynn Fuel Co. during the years in issue, Mr. Flynn was compensated as an employee, and he did not have an ownership interest in the company. In addition to the amounts he received from the businesses, Mr. Flynn received a monthly check from the Naval Reserves of approximately $108, and a monthly disability check of approximately $50 from the Veteran's Administration.

Petitioner was not employed outside the home during the years in issue; she maintained the household and cared for the Flynns' five children. Mr. Flynn gave petitioner approximately $236 a week to cover the household expenses. Petitioner also had a charge card for a department store and a children's clothing store. Petitioner paid the utility, food, doctor, and dental bills, and the $135 monthly mortgage. Although Mr. Flynn did not discuss financial matters with her, petitioner knew that Mr. Flynn had other financial resources available, and she believed he could have afforded to give her more money to run the household.

While petitioner paid the household expenses, Mr. Flynn paid for the family's health and car insurance. He also paid private school tuition of $250-300 a year for one of the children.

Petitioner and Mr. Flynn and their children lived in a 4-bedroom split-level house they built in 1967. Petitioner and Mr. Flynn's lifestyle improved moderately during the years in issue. In 1974, Mr. Flynn had a pool built in the backyard. In 1975, Mr. Flynn bought petitioner a mink coat for Christmas. Also in 1975, the Flynn family took a 2-week vacation to Puerto Rico and stayed at the Caribe Hilton. In either 1975 or 1976, petitioner, Mr. Flynn, and another couple traveled to Spain for 8 days, and several months later they traveled to Costa Rica for 8 or 9 days. In 1976, the Flynn family again went to Puerto Rico for 2 weeks and stayed at the Caribe Hilton. Also in 1976, Mr. Flynn bought a Cadillac for himself.

On their 1974 return, the Flynns reported taxable income of $14,364. They reported that Mr. Flynn had wage earnings of $27,542, income from TFC of $5,386, and a loss from River of $5,030.

On their 1975 return, the Flynns reported taxable income of $45,496. They reported that Mr. Flynn had wage earnings of $58,031, a loss from TFC of $1,652, and income from River of $455.

On their 1976 return, the Flynns reported taxable income of $29,671. They reported that Mr. Flynn had wage earnings of $55,014 and losses from TFC and River of $721 and $10,191, respectively.

Petitioner was unaware of any understatements of income or tax for the 3 years in issue.

### OPINION

A husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). However, an "innocent" spouse is relieved of liability if he or she proves the following: (1) That a joint return has been made for a taxable year; (2) that on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) that he or she did not know, and had no reason to know, of such substantial understatement when he or she signed the return; and (4) that after a consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1),[2] as amended by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802 (1984-3 C.B. (Vol. 1) 309); *Purcell v. Commissioner,* 86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Petitioner bears the burden of establishing that each of the four requirements of section 6013(e) has been satisfied. *Purcell v. Commissioner,* 826 F.2d at 473; *Sonnenborn v. Commissioner,* 57 T.C. 373, 381-383 (1971).

The parties agree that for each of the years in issue petitioner and Mr. Flynn filed joint returns. Sec. 6013(e)(1)(A). The parties also agree and we find that there is a substantial understatement of tax attributable to Mr. Flynn for each of the years in issue. Sec. 6013(e)(3) and (4).[3]

---

[2]The Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802 (1984-3 C.B (Vol. 1) 309), amended sec. 6013(e) retroactively to all years to which the Internal Revenue Code of 1954 applies.

[3]A substantial understatement, for purposes of the innocent spouse provisions, means any understatement which exceeds $500. Sec. 6013(e)(3). If the substantial understatement is

## Section 6013(e)(1)(B)

Section 6013(e)(1)(B) requires that there be a substantial understatement of tax attributable to grossly erroneous items of the other spouse. Respondent contends that petitioner has failed to prove that all of the understatements are attributable to grossly erroneous items.

Initially, to determine whether the understatements are attributable to grossly erroneous items, we must determine whether the adjustments at issue are items of income or deduction. All of the adjustments at issue in this case result from disallowed costs of goods sold and deductions claimed by TFC and River, both subchapter S corporations.

The characterization of the adjustments to petitioner's returns as either income or deductions is of critical importance because the innocent spouse provisions contained in section 6013(e)(2) provide relief only with respect to "grossly erroneous items" and define these items as any item "omitted from gross income" or "any claim of a deduction, credit, or basis * * * for which there is no basis in fact or law." Thus, items of omitted gross income are automatically considered grossly erroneous, whereas disallowed deductions must be proven to be without any basis in fact or law. *Purcell v. Commissioner*, 86 T.C. at 240. Respondent argues that the understatements in issue are attributable to disallowed corporate deductions and that petitioner has failed to carry her burden of proof to show that those deductions were without a basis in fact or law.[4]

Respondent's brief acknowledges that the characterization of adjustments to a shareholder's income resulting from disallowed costs and deductions claimed on a subchapter S corporate return is an issue of first impression. Respondent argues that this characterization is properly determined by looking at the nature of the adjustments at the corporate level. He argues that "as in the case of a partnership, the tax treatment of any subchapter S item should be deter-

---

attributable to grossly erroneous items of deduction, then the liability in respect of which the alleged innocent spouse seeks to be relieved must exceed a specified percentage of such spouse's adjusted gross income for the year preceding the year in which the notice of deficiency is mailed. Sec. 6013(e)(4).

[4]Respondent has conceded, however, that the portion of the cost of goods sold claimed by TFC on its return for taxable year ended July 31, 1974, attributable to the purchase of a $100,000 certificate of deposit, is a grossly erroneous item.

mined at the entity level (subchapter S level)." Respondent argues that this position is supported by our opinion in *Ketchum v. Commissioner,* 77 T.C. 1204 (1981), revd. 697 F.2d 466 (2d Cir. 1982). We conclude that for the years in issue, the characterization of adjustments arising out of disallowed costs and deductions claimed on a subchapter S corporate return is determined at the shareholder level.

Prior to the 1984 amendment to the innocent spouse provisions, the question of whether there was an omission from gross income was "determined in the manner provided by section 6501(e)(1)(A)." Sec. 6013(e)(2)(B). Section 6501(e)(1)(A) provided that an amount disclosed in the return or a statement attached to the return was to be taken into account in determining whether there was an omission. Amounts reported on a subchapter S corporate return were deemed to have been disclosed at the shareholder level. *Ketchum v. Commissioner,* 697 F.2d 466.[5]

In 1984, the innocent spouse provisions were amended to retroactively delete any reference to section 6501.[6] There is no definition of an omission from gross income contained in the current innocent spouse provisions, and our opinion in *Ketchum v. Commissioner,* 77 T.C. 1204, which relies upon the section 6501(e) definition of gross income, is not controlling. We must therefore examine the code provisions applicable to this case to determine whether there has been an omission from gross income.

Section 61 provides that "gross income means all income from whatever source derived * * * ." Section 1373, as in effect and applicable to the years in issue, provided more specifically that the undistributed taxable income of a subchapter S corporation "shall be included in the *gross income* of the shareholders." (Emphasis added.) Section 1374(a) provided that a net operating loss of a subchapter S corporation "shall be allowed as a deduction from gross income of the shareholders of such corporation * * * ."

During the years in issue, a subchapter S corporation was not merely a passthrough entity whereby the tax characterization of items of income and deduction reported on the S

---

[5]See *Douglass v. Commissioner,* T.C. Memo. 1984-369, for a discussion of *Ketchum v. Commissioner,* 697 F.2d 466 (2d Cir. 1982), revg. 77 T.C. 1204 (1981).

[6]Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802 (1984-3 C.B. (Vol. 1) 309).

corporation remains the same at the shareholder level. *Crook v. Commissioner,* 80 T.C. 27, 31-32 (1983), affd. without opinion 747 F.2d 1463 (5th Cir. 1984). The legislative history of the 1982 amendment to the subchapter S provisions[7] makes clear that, prior to amendment, neither section 1373 nor any other provision of subchapter S effected a complete pass through of the tax characteristics of items of income or deduction from the subchapter S corporate level.

Because of the passthrough of income and loss to the shareholders of a subchapter S corporation, subchapter S is often described as a method of taxing corporations as if they were partnerships. In fact, there are a number of significant differences in tax treatment under the partnership provisions (subchapter K) and the subchapter S provisions. For example, the partnership provisions provide a complete passthrough of the tax characteristics of the items of income and deduction incurred by the partnership, while the subchapter S provisions do not provide such a passthrough (except for capital gains). * * *

\* \* \* \* \* \* \*

The committee believes that partnership-like rules which pass items of income and loss through to the corporation's shareholders, with distributions being generally a return of the shareholder's investment including previously taxed earnings, is a simpler and more rational taxing scheme than the modified corporate rules of present subchapter S. Therefore, the bill adopts a partnership approach which treats all items, including such items as depletion, foreign income and fringe benefits generally like they are treated under the partnership provisions. [S. Rept. 97-640 (1982), 1982-2 C.B. 718, 720.]

The 1982 amendment which effected the passthrough of the tax characteristics of the items of income and deduction from the subchapter S corporate level was effective for tax years beginning after December 31, 1982, and thus does not affect the years in issue.[8]

---

[7]Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669 (1982-2 C.B. 702).

[8]The effective dates were provided in the Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669, 1697 (1982-2 C.B. 702, 717-718). The subch. S provisions were amended to provide:

Sec. 1366. Pass-Thru of Items to Shareholders.

(a) Determination of Shareholder's Tax Liability.—

(1) In general.—In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), there shall be taken into account the shareholder's pro rata share of the corporation's—

(A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and

A plain reading of section 6013(e) requires that we look to the adjustments to the taxpayer's return to determine whether there has been an omission from gross income. Nothing in section 6013(e), subsequent to its amendment in 1984, suggests that this determination is to be made with reference to a subchapter S corporate return. The report of the House Ways and Means Committee states: "Grossly erroneous items include *any item of income* that is omitted from gross income, *regardless of the basis for omission.* A claim for deduction or credit will be treated as a grossly erroneous item only if the claim had no basis in law or fact." Supplemental Report of Comm. on Ways and Means, H. Rept. 98-432 (Pt. 2), on H.R. 4170 (Tax Reform Act of 1984), at 1502 (1984). (Emphasis added.) Therefore, a positive increase in a shareholder's income from a subchapter S corporation is an item of omitted gross income regardless of the nature of the adjustment at the corporate level. Likewise, a claimed loss from a subchapter S corporation is an item of deduction.

Respondent decreased the Flynns' net operating loss deductions from TFC and River for 1975 and 1976. For these years, the Flynns overstated a deduction. Under section 1374(b), each shareholder was allowed a deduction "equal to his portion of the corporation's net operating loss * * * ." Losses of a subchapter S corporation were passed through to its shareholders as a bottom-line net operating loss deduction. *Crook v. Commissioner,* 80 T.C. at 31-32. Cases interpreting the subchapter S provisions prior to the 1982 amendments have held that a shareholder's excessive deduction of a subchapter S corporation's net operating loss is an

---

(B) nonseparately computed income or loss.
For purposes of the preceding sentence, the items referred to in subparagraph (A) shall include amounts described in paragraph (4) or (6) of section 702(a).

(2) Nonseparately computed income or loss defined.—For purposes of this subchapter, the term "nonseparately computed income or loss" means gross income minus the deductions allowed to the corporation under this chapter, determined by excluding all items described in paragraph (1)(A).

(b) Character Passed Thru.—The character of any item included in a shareholder's pro rata share under paragraph (1) of subsection (a) shall be determined as if such item were realized directly from the source from which realized by the corporation, or incurred in the same manner as incurred by the corporation.

(c) Gross Income of a Shareholder.—In any case where it is necessary to determine the gross income of a shareholder for purposes of this title, *such gross income* shall include the shareholder's pro rata share of the gross income of the corporation. [Emphasis added.]

overstated deduction. *Ketchum v. Commissioner,* 697 F.2d 466; *Douglass v. Commissioner,* T.C. Memo. 1984-369.

Since the claimed losses of TFC for 1975 and of River for 1976 are items of deduction, in order to establish that they are grossly erroneous, petitioner must show that they had no basis in fact or law. *Purcell v. Commissioner,* 86 T.C. at 240. A deduction has no basis in fact when the expenditure or loss for which the deduction is claimed never occurred. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. "Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or * * * phony." *Douglas v. Commissioner,* 86 T.C. 758, 763 (1986) (fn. ref. omitted). Petitioner may not rely on the mere disallowance of the claimed deductions or an inability to substantiate the amounts of otherwise allowable deductions to establish a lack of basis in fact or law for the deductions disallowed. *Douglas v. Commissioner, supra* at 763.

Petitioner has not proven that the loss deductions were grossly erroneous items. Petitioner testified that she had no personal knowledge of the affairs of either subchapter S corporation or of the corporate adjustments at issue. She offered no evidence other than respondent's determination to prove that the loss deductions were grossly erroneous.

Petitioner's reliance on the 30-day letter she received from respondent, which proposed an addition to tax for fraud for the years in issue, is misplaced and does not prove that petitioner is entitled to innocent spouse treatment. A taxpayer may not rely upon respondent's determinations to prove such entitlement. See *Douglas v. Commissioner,* 86 T.C. at 763. In any event, the allegation of fraud in the 30-day letter was eliminated and respondent is not claiming that the understatements were due to fraud.

We find that, to the extent respondent's determinations increased petitioner's gross income from TFC and River, the resulting understatements of tax were due to grossly erroneous items. We also find that the understatements of tax resulting from respondent's determinations disallowing all or any portion of petitioner's claimed loss deductions

from TFC and River are not attributable to grossly erroneous items.

The following adjustments are grossly erroneous items:

| *1974* | *Amount of increased income* |
| --- | --- |
| TFC .................................................... | $63,483 |
| *1975* | |
| River .................................................. | 9,010 |
| *1976* | |
| River .................................................. | 4,592 |

The following adjustments are not grossly erroneous items:

| *1975* | *Amount of disallowed loss deductions* |
| --- | --- |
| TFC .................................................... | $540 |
| *1976* | |
| River .................................................. | 10,191 |

### *Section 6013(e)(1)(C)*

Petitioner must also prove that in signing the returns she did not know, and had no reason to know, of Mr. Flynn's substantial understatements. Petitioner did not know of the deductions producing the understatements. Therefore, the only question is whether she had reason to know of the facts giving rise to the substantial understatements.

The standard to be applied in determining whether a taxpayer "had reason to know" is whether a reasonably prudent person with knowledge of the facts possessed by the person claiming innocent spouse status should have been alerted to the possibility of a substantial understatement. *Shea v. Commissioner,* 780 F.2d 561, 566 (6th Cir. 1986), affg. in part and revg. in part a Memorandum Opinion of this Court; *Sanders v. United States,* 509 F.2d 162, 166-167 (5th Cir. 1975); *Terzian v. Commissioner,* 72 T.C. 1164, 1170 (1979); *Mysse v. Commissioner,* 57 T.C. 680, 689-699 (1972).[9] Three factors have repeatedly appeared and been held significant in determining whether a spouse had reason to know of an understatement of tax: (1) Participation in business affairs or bookkeeping by the alleged innocent spouse (*Quinn v. Commissioner,* 62 T.C. 223 (1974),

---

[9] See *McRae v. Commissioner,* T.C. Memo. 1988-374; *Levin v. Commissioner,* T.C. Memo. 1987-67.

affd. 524 F.2d 617 (7th Cir. 1975)); (2) the guilty spouse's refusal to be forthright concerning the couple's income (*Adams v. Commissioner,* 60 T.C. 300 (1973)); and (3) the presence of unusual or lavish expenditures (*Mysse v. Commissioner, supra* at 699). Another factor the courts have focused on is whether the couple's standard of living improved significantly during the years in issue. *Mysse v. Commissioner, supra* at 698-699.[10]

Petitioner did not participate in the business affairs or bookkeeping of TFC or River. She was not familiar with the day-to-day operations of either corporation or with their financial affairs. She did not even know the nature of River's business. Petitioner was not familiar with the family's finances because Mr. Flynn did not discuss financial matters with her.

Family expenditures during the years in issue were not unusual or lavish within the meaning of *Mysse v. Commissioner, supra* at 699. During 1974, Mr. Flynn had wage earnings of $27,542. Mr. Flynn gave petitioner $236 each week to cover household expenses out of which petitioner paid household expenses and the Flynns' monthly mortgage on their 4-bedroom house of $135. Thus, the Flynns' 1974 household and mortgage expense budget did not exceed $12,272. Mr. Flynn paid for car and health insurance. Under the circumstances, the pool the Flynns built in the backyard during 1974 is not an unusual or lavish expense. During 1975, Mr. Flynn had wage earnings of $58,031, and their basic household expenses and mortgage payments remained low. Two vacations and Mr. Flynn's gift of a mink coat to Mrs. Flynn during 1975, again, are not unusual or lavish expenditures under the circumstances. During 1976, Mr. Flynn had wage earnings of $55,014. In light of Mr. Flynn's 1976 wage earnings, and the Flynns' household expenses which again remained low, two vacations and Mr. Flynn's purchase of a Cadillac are not unusual or lavish expenses.

The amounts reported on the joint returns were not of such a nature that they would have alerted petitioner to the fact that there were understatements.[11]

---

[10]See *Bouskos v. Commissioner,* T.C. Memo. 1987-574.

[11]Compare *Cohen v. Commissioner,* T.C. Memo. 1987-537; *Levin v. Commissioner,* T.C. Memo. 1987-67.

Where, as in this case, the husband controlled the family's financial affairs and did not involve the wife in business transactions, we have held that the wife had no reason to know of the understatement. *Hayes v. Commissioner,* T.C. Memo. 1989-327 (1989); *Hawbaker v. Commissioner,* T.C. Memo. 1988-406; *Guth v. Commissioner,* T.C. Memo. 1987-522. Petitioner has shown that a reasonably prudent taxpayer with her knowledge of Mr. Flynn's financial resources would have no reason to know of the understatements. *Terzian v. Commissioner, supra* at 1170-1171.

### *Section 6013(e)(1)(D)*

The final requirement for innocent spouse relief is that, given all the facts and circumstances, it would be inequitable to hold the spouse seeking relief liable for the deficiency attributable to the substantial understatement. Whether it is inequitable to hold a person liable is to be determined on the basis of all the facts and circumstances. Sec. 6013(e)(1)(D); sec. 1.6013-5(b), Income Tax Regs. A factor to be considered is whether a significant benefit was received by the spouse as a result of the understatement. Sec. 1.6013-5(b), Income Tax Regs. See *Guth v. Commissioner, supra* n. 2. Normal support is not a "significant benefit" for purposes of determining whether denial of innocent spouse relief would be inequitable under section 6013(e)(1)(D). Sec. 1.6013-5(b), Income Tax Regs.; *Purcell v. Commissioner,* 86 T.C. at 242; *Terzian v. Commissioner, supra* at 1172. Normal support is measured by the circumstances of the parties. See *Sanders v. Commissioner, supra* at 168.

There is no evidence that petitioner received any benefit from the understatements. Mr. Flynn controlled the family finances and did not allow petitioner to have access to the couple's money. Even if part of the understatements did inure to petitioner's benefit, such benefit did not exceed normal support.

Another factor relevant to the determination of the equitableness of granting relief to the spouse claiming protection is whether the spouses have been divorced. Sec. 1.6013-5(b), Income Tax Regs.; *Terzian v. Commissioner, supra* at 1173. Here, divorce occurred in June 1982.

Based upon the record as a whole, we believe it would be inequitable to hold petitioner liable for the portion of the understatements attributable to the increases in gross income from TFC and River.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, WHALEN, COLVIN, *JJ.* agree with this opinion.