JANET BLISS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bliss v. Commissioner
Docket No. 3759-89
United States Tax Court
T.C. Memo 1993-390; 1993 Tax Ct. Memo LEXIS 392; 66 T.C.M. (CCH) 522; August 25, 1993, Filed *392 Decision will be entered for respondent. For petitioner: Stephen A. Zorn. For respondent: Doreen M. Susi. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioner's 1982 Federal income tax: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
$ 15,590
$ 779.50
50% of the
$ 3,897.50
interest due
on $ 15,590
All section references are to the Internal Revenue Code of 1954, as amended. The sole issue for decision in this case is whether petitioner qualifies under section 6013(e) to be relieved of liability for the tax attributable to her joint 1982 Federal income tax return. FINDINGS OF FACT The parties have stipulated some of the facts. The Stipulation of Facts filed by the parties and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Glendale, New York, at the time she filed the petition in this case. Petitioner married Mr. Harold J. Bliss in January 1963. She was 21 years old. The couple lived in Philadelphia, Pennsylvania, where Mr. Bliss attended LaSalle College, and where petitioner, who had *393 only a high school education, worked as a billing clerk for City Service Oil Co. Petitioner held her job for approximately 1 year, until complications from her first pregnancy forced her to quit working. She gave birth to the couple's first child on March 28, 1964. Petitioner did not work outside the home again until 1982. In 1964, Mr. Bliss graduated from LaSalle College and received a scholarship to attend Notre Dame University Law School. The family moved to South Bend, Indiana, where they lived until Mr. Bliss's graduation from Notre Dame in May 1967. Mr. Bliss then accepted a job with the Phoenix, Arizona, law firm of Evans, Kitchell & Jenckes, and the family moved to Scottsdale, Arizona, where petitioner and her husband purchased a house. Petitioner gave birth to the couple's second child on November 4, 1965, and to their third child on July 20, 1968. The third child suffered from hyaline membrane syndrome and the expense of his medical treatment drained the family's finances. Thus, the family continued to struggle financially despite Mr. Bliss's position as an attorney. When Mr. Bliss began working for Evans, Kitchell & Jenckes, he discussed his salary with petitioner. *394 By 1970, however, petitioner did not know Mr. Bliss's salary, and, when she asked him about his income, Mr. Bliss became hostile and angry. Mr. Bliss controlled the couple's joint checking account. He made all deposits into the account, and, until 1973, he wrote most of the checks. Mr. Bliss gave petitioner a weekly allowance, which she used to buy food and clothing for the family. Petitioner's marriage to Mr. Bliss began to falter in the early 1970s. In November 1973, Mr. Bliss moved out of the family's house. After a short time he returned, but he moved out again the following January. Mr. Bliss remained separated from petitioner until sometime in 1978. In that year, he filed for divorce but withdrew the petition after he reconciled with petitioner. The couple's reconciliation was short-lived, and Mr. Bliss moved out again a few months later. Despite Mr. Bliss's separation from petitioner and their children, he continued to provide them with financial support. He made biweekly deposits into a joint checking account that he maintained with petitioner. Petitioner used these funds to pay family expenses. Initially, Mr. Bliss deposited $ 600 into the account every 2 weeks. *395 By the time of the couple's divorce in 1983, Mr. Bliss's biweekly deposits totaled $ 1,200. Mr. Bliss also paid other family expenses as they arose. After paying for an item, Mr. Bliss sometimes, but not always, deducted its cost from his next deposit into the couple's checking account. During 1982, Mr. Bliss's payments on behalf of the family in excess of his biweekly deposits totaled approximately $ 12,500. These payments included high school tuition, the cost of a trip to France for one of his daughters, the cost of a trip to Texas for petitioner and one of his daughters to visit colleges, the cost of auto and life insurance, and miscellaneous household and clothing bills. In addition, in December 1982, petitioner's car was damaged beyond repair in an accident that took place while one of the daughters was driving it. Mr. Bliss gave petitioner $ 5,000 to use as a downpayment on another car. He did not seek reimbursement for any of these additional payments. Petitioner's involvement with the family's finances increased during the couple's separation. After Mr. Bliss moved out, petitioner paid the family's household bills and mortgage payments. As noted above, petitioner *396 made these payments with the funds that Mr. Bliss deposited to the couple's joint account. At the end of each year, petitioner informed Mr. Bliss of the deductible expenses paid during the year. He used the information to complete the couple's joint Federal income tax return. Petitioner did not otherwise participate in the preparation of their joint tax returns. On January 1, 1981, Mr. Bliss left Evans, Kitchell & Jenckes. He and another lawyer, David West, formed West & Bliss, a professional corporation (hereinafter referred to as West & Bliss). Mr. Bliss did not discuss his decision to leave Evans, Kitchell with petitioner. She learned of it when he asked her to help with a reception to celebrate the opening of the new firm. The first year of West & Bliss was a financial success. The couple's 1981 joint Federal income tax return reported $ 117,112 of earnings from the firm, and $ 107,716 of adjusted gross income, attributable solely to Mr. Bliss's earnings. In January 1982, Mr. Bliss filed a petition for divorce in the Superior Court for the County of Maricopa, Arizona. Petitioner was represented in the divorce action by Mr. Jeremy E. Butler, and his associate Ms. Carole *397 P. Clark. Mr. Bliss was represented in the divorce action by Mr. Robert A. Jensen and his associate, Mr. Wm. David Anderson. During the divorce proceedings, petitioner, through her attorneys, obtained discovery of certain books and records from West & Bliss. Specifically, petitioner obtained: (1) A copy of the Articles of Incorporation of West & Bliss, P.A.; (2) a list of clients of the firm that Mr. Bliss had originated; (3) a list of payments made to Mr. Bliss during 1981, entitled "Officer loans and salaries 12/31/81" (referred to herein as the 1981 ledger); (4) copies of the firm's ledger sheets for 1982 for two accounts, one entitled "Officers' salaries -- Bliss" and the other entitled, "Loans to officers -- Bliss" (together referred to herein as the 1982 ledger); (5) two lists of expenses reimbursed to Mr. Bliss, one for the "year ended 12/31/81", and the other for the "ten months ended 10/31/82"; and, (6) two lists of the time billed by Mr. Bliss, one for the "year ended 12/31/81", and the other for the "ten months ended 11/1/82". The 1981 ledger is an accounting work paper that shows the date and check number of each disbursement made to Mr. Bliss. The amount of each *398 disbursement is listed under one of two columns, the first designated "loans" and the second designated "salary". The 1987 ledger indicates that $ 75,426.41 was originally classified as "salary". The remainder, $ 43,660.18, was originally classified as "loans". However, at the end of the year, the aggregate disbursements in the "loans" column were reclassified as "salary". Thus, the 1981 ledger shows that West & Bliss paid a total of $ 119,086.59 in "salary" to Mr. Bliss during 1981. The total disbursements to Mr. Bliss during 1981, $ 119,086.59, included FICA tax withholding of $ 1,975.05. The firm treated the difference between those amounts, $ 117,111.54, as Mr. Bliss's compensation for 1981, and it issued to Mr. Bliss a Form W-2, Wage and Tax Statement, that reported wages of that amount. He reported $ 117,112 as compensation from the firm on the couple's joint income tax return for 1981. The 1982 ledger covers the 10 months ending October 31, 1982. The account for "Officers' salaries -- Bliss" lists ten payments of $ 6,000 to Mr. Bliss, a total of $ 60,000. The account for "Loans to officers -- Bliss" lists eight payments to Mr. Bliss totaling $ 29,363.26. Thus, according *399 to the 1982 ledger, West & Bliss paid a total of $ 89,363.26 to Mr. Bliss through October 31, 1982. After receiving the above information, petitioner, through her divorce attorneys, deposed Mr. Bliss. Several days later, as required by the rules of the superior court, petitioner and Mr. Bliss each filed with the court a sworn affidavit of individual income, expenses, liquid assets, and debts. Mr. Bliss's affidavit lists "gross monthly pay" of $ 6,000 per month but states in a footnote that such amount "Excludes periodic draws; see pretrial statement." At the time that he filed his affidavit in the divorce action, Mr. Bliss anticipated that, at the end of the year, West & Bliss would recharacterize as "salary" the disbursements that it had originally treated on its books as "loans". Accordingly, Mr. Bliss's affidavit lists a debt to the Internal Revenue Service in the amount of $ 9,900, which is the anticipated Federal tax liability that would be triggered if the loans were recharacterized. The Joint Pretrial Statement referred to in Mr. Bliss's affidavit is another pleading that was filed in the divorce proceeding. Attached to the Joint Pretrial Statement are two exhibits, *400 one prepared by or on behalf of petitioner, and the other prepared by or on behalf of Mr. Bliss, each of which sets forth a proposed distribution of the couple's community property. Mr. Bliss's proposal states as follows: 10. For purposes of computation of spousal maintenance and of child support, the Court is asked to note that Husband's 1981 income net after payment of state and federal income taxes and F.I.C.A. withholding was $ 87,000.00. Gross revenue attributable to Husband's efforts and interest in the law firm of WEST & BLISS, P.A. in calendar year 1981 was $ 177,241.00. Therefore, his realized income was approximately 49% of gross receipts. To date, 1982 income has not been as high, attributable to the settlement of two major lawsuits and conclusion of other litigation which was ongoing during 1981. Through September 30, 1982, gross revenue attributable to Husband's efforts and his interest in the firm was $ 119,398.00. Forty-nine percent (49%) of this figure is $ 58,505.00. Accordingly, Husband's current average monthly income is $ 6,500.56 per month. Although this average is deceptive due to the recent settlement of a fairly large matter in litigation, Husband's *401 proposal is based upon a net monthly pay of $ 6,500.00 per month.
Petitioner, her former husband, and their attorneys appeared on December 8, 1982, for trial of the divorce action. However, before the start of trial, the attorneys for the parties, Messrs. Butler and Jensen, negotiated a settlement of the case in the presence of their clients. During the negotiations, the attorneys discussed numbers represented on a flip chart or blackboard. Among the principal issues addressed were Mr. Bliss's anticipated income from West & Bliss for 1982 and the couple's predicted tax liability for 1982. The attorneys predicted that the couple would owe an additional $ 11,000 in Federal taxes for the 1982 tax year, beyond the withholding made from Mr. Bliss's salary. Petitioner and Mr. Bliss agreed to limit petitioner's liability for the additional 1982 taxes to a maximum of $ 5,500. This agreement was later memorialized in the Separation Agreement that petitioner and Mr. Bliss executed on December 13, 1982. That agreement provides as follows: 24. INCOME TAXES
The parties shall file either jointly or separately for tax year 1982, as shall be to their maximum joint tax advantage. *402 Husband shall pay all 1982 income taxes, whether federal or state, subject to reimbursement by Wife to the extent of one-half, but not to exceed $ 5,500.00. All federal and state taxes paid by Husband in excess of $ 11,000.00 shall not be reimbursable by Wife. Wife's obligation to Husband under this paragraph 24 shall be secured by a note and deed of trust upon the former family residence, as awarded hereinafter. Said note and deed of trust are specifically not incorporated into this Agreement, and are not joined, merged, or otherwise a part or portion of this Agreement except as this Agreement requires the execution of documents for compliance with its terms. Any tax liability not now known for tax years 1979 or 1980 due to an error in the reporting of Husband's income, failure to report his income, or due to any erroneous claim of deduction shall be the responsibility of Husband. Any tax liability arising from any other source for any year other than as specified in this paragraph is not subject to this Agreement.
The Separation Agreement also states as follows: 1. ADVICE OF COUNSEL
Each of the parties is, and has had the opportunity to become fully and completely *403 informed of the financial and personal status of the other, and each of them has had the advice of counsel, to-wit: Wife having had the advice of LEWIS & ROCA and Jeremy E. Butler and Carole P. Clark thereof; and Husband the advice of MITCHELL, JENSEN & TIMBANARD, P.C. and Robert A. Jensen and Wm. David Anderson thereof, and each of the parties has given mature thought to the making of this Agreement and all of the obligations contained herein, and each of the parties understands that the agreements and obligations assumed by the other are assumed with the express understanding and agreement that they are in full satisfaction of all obligations which each of said parties now has or might hereafter or otherwise have toward the other.
At the end of 1982, West & Bliss began to experience cash flow problems. In late December, the firm's accountant, Mr. Jess Finerman, advised the officers of West & Bliss "that the 1982 loans would not be taxable as income to the recipients if they [i.e. the loans] were treated as loans by the corporation and by the recipients and the proper documentation for the loans was prepared." Thereafter, Mr. Bliss executed a promissory note to the firm dated *404 December 31, 1982, in the amount of $ 32,940.12, the year-end balance of his loan account with the firm. On its 1982 Federal income tax return, West & Bliss reported that it had paid compensation to Mr. Bliss of $ 71,171. This amount does not include the balance of Mr. Bliss's loan account, $ 32,940.12. Mr. Finerman prepared the Bliss's joint 1982 return. The return reports $ 71,171 as Mr. Bliss's compensation from West & Bliss. Contrary to the expectations of petitioner, Mr. Bliss, and their attorneys on December 8, 1982, the return claims an overpayment of income tax of $ 6,875. This overpayment was caused by the failure of West & Bliss to recharacterize "Loans to officers -- Bliss" as additional compensation. In June of 1983, Mr. Bliss presented the couple's joint 1982 return, as prepared by Mr. Finerman, to petitioner for signing. Mr. Bliss called petitioner's attention to the fact that they would receive a tax refund of $ 6,875. Petitioner signed the return, and she received the refund a few months later. She deposited it into her bank account and gave one-half to Mr. Bliss. Sometime after 1982, respondent audited the 1982 return filed on behalf of West & Bliss. Respondent *405 determined that West & Bliss had improperly treated as loans certain distributions to its owners, David West and Harold Bliss, in the amounts of $ 59,792 and $ 32,940, respectively, for a total amount of $ 92,732. Respondent determined that the distributions were actually additional salaries to Messrs. West and Bliss. The officers of West & Bliss entered into an agreement with the IRS in which they conceded that the amount treated on the return as loans to officers, $ 92,732.00, was additional salaries to the officers of West & Bliss. Based on the adjustment to the 1982 return of West & Bliss, respondent determined that petitioner's 1982 joint return understated Mr. Bliss's income from the firm. Accordingly, respondent determined the subject deficiency in, and additions to, the tax reported on petitioner's 1982 joint return. Respondent's notice of deficiency states as follows: In accordance with the corporate examination, the distribution of corporate funds to you is not a loan and has been included in income. Accordingly, your taxable income has been increased $ 32,940.00.
At the time of her divorce, petitioner had begun taking classes at Scottsdale Community College. *406 These classes included college level English, algebra, and sociology. In September 1983, she began a 1-year, full-time paralegal program at Arizona State University. Petitioner then went on to the University of Phoenix, where she completed her bachelor's degree in business administration in July 1986. In September 1986, she matriculated to law school at the City University of New York and completed a juris doctor degree in May 1989. OPINION Respondent determined that the joint 1982 Federal income tax return filed by petitioner and her former husband understated the couple's gross income by $ 32,940.12. Petitioner does not question the correctness of respondent's adjustment to her joint 1982 return. The sole issue raised by petitioner is whether she qualifies as an innocent spouse under section 6013(e) and is relieved of joint and several liability for the tax and additions to tax determined by respondent with respect to that return. Section 6013(a) provides that "A husband and wife may make a single return jointly of the income taxes under subtitle A" of the Internal Revenue Code. Section 6013(d)(3) provides that, if they elect to do so, the tax is computed on the aggregate *407 income of both spouses and the liability with respect to the tax on the return is joint and several. An exception to the rule imposing joint and several liability in the case of a joint return is found in section 6013(e)(1), which states as follows: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,
then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
To qualify as an "innocent *408 spouse" under section 6013(e)(1) a taxpayer must establish that each of the above requirements is satisfied. Rule 142(a) of the Tax Court Rules of Practice and Procedure. Failure to prove any one of the above requirements prevents the taxpayer from qualifying as a so-called innocent spouse. E.g., Hayman v. Commissioner, 992 F.2d 1256, 1260 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). The parties have stipulated that petitioner made a joint return for 1982 and that there is a substantial understatement of tax on the return attributable to grossly erroneous items of Mr. Bliss. Accordingly, subparagraphs (A) and (B) of section 6013(e)(1) are satisfied. The issue is whether petitioner has met her burden of proving that subparagraphs (C) and (D) of section 6013(e)(1) are satisfied. Under section 6013(e)(1)(C), petitioner must prove that in signing the return, she did not know, and had no reason to know, of the substantial understatement caused by Mr. Bliss's omission of $ 32,940 from *409 his gross income. See, e.g., Purcell v. Commissioner, 86 T.C. 228, 236 (1986), affd. 826 F.2d 470 (6th Cir. 1987). This is a question of fact to be determined after taking into consideration all available facts and circumstances. See, e.g., Flynn v. Commissioner, 93 T.C. 355, 365 (1989). This issue turns primarily on whether the financial information that petitioner and her divorce attorneys obtained at the end of 1982 was sufficient to put petitioner on notice that Mr. Bliss's income was understated when she signed to couple's return. We believe that it was. Accordingly, we find that petitioner either knew or had reason to know of the substantial understatement caused by Mr. Bliss's omission of $ 32,940 from the gross income reported on the couple's joint return for 1982. For this reason, we hold that petitioner has not shown that section 6013(e)(1)(C) is satisfied. Accordingly, petitioner is not eligible for innocent spouse status under section 6013(e). We do not reach the question whether section 6013(e)(1)(D) is satisfied. One of the main issues in petitioner's divorce case involved *410 the level of Mr. Bliss's income from his professional corporation. As petitioner's divorce attorney testified during the trial of this case: I was worried as to whether we were having what we like to call divorce planning in the sense that Mr. Bliss was some how putting over until after the divorce the collection of his fees.
During discovery in the divorce case, petitioner's divorce attorneys subpoenaed the books and records of West & Bliss and deposed Mr. Bliss. Among the information that petitioner and her divorce attorneys obtained were ledgers of the distributions that had been made by the firm to Mr. Bliss during 1981 and 1982. The 1981 ledger shows that West & Bliss had classified some of the distributions to Mr. Bliss during the year as "loans" but had recharacterized them as "salary" when the firm closed its books at the end of the year. The "loans" were part of the $ 117,112 in compensation that the firm paid to Mr. Bliss during 1981. The 1982 ledger that petitioner and her divorce attorneys received accounts for the first 10 months of that year. It shows that West & Bliss paid $ 6,000 per month to petitioner as "salary" and that the firm made additional distributions *411 to him in the aggregate amount of $ 29,363.26, which were characterized as "loans". Accordingly, the 1982 ledger shows that the firm made total distributions to Mr. Bliss of $ 89,363.26 during the first 10 months of the year. The pleadings filed by Mr. Bliss in the divorce action confirm that he expected his 1982 income from West & Bliss to exceed $ 6,000 per month. The affidavit of income and expenses that he filed lists "gross monthly pay" of $ 6,000 but states, in a footnote, that such amount "Excludes periodic draws; see pretrial statement." Further, Exhibit A of the Joint Pretrial Statement filed in the divorce action reports that as of September 30, 1982, Mr. Bliss's income from the firm after payment of Federal and State income taxes had averaged $ 6,500.56 per month. Additionally, none of the pleadings filed in the divorce suit or the Separation Agreement that petitioner and her former husband executed makes provision for any debt of Mr. Bliss to West & Bliss. In his testimony in this case, Mr. Bliss's lead divorce attorney, Mr. Jensen, rejected the contention that petitioner's divorce lawyer, Mr. Butler, had considered Mr. Bliss's compensation to consist only of the *412 "salary" distributions of $ 6,000 per month and did not take into account the distributions that were booked as "loans". Mr. Jensen testified as follows: I can assure you Mr. Butler took quite the contrary position. In other words, that the stated salary had to be increased by the amount of the draws. * * * For purposes of determining spousal maintenance and child support, we would have regarded the loans as well as the stated salary as income for the year or years in question.
Mr. Jensen also testified as follows: Well, when you represent -- Jerry Butler is a reasonably well-known divorce lawyer who represents his clients with vigor. There is no way that he would have permitted us under this set of circumstances, nor would we have attempted to argue, nor did I attempt to argue, that those loans which had been reversed in the year 1981 would not be reversed in the year '82 and become income and any such argument quite frankly would have been met with a good deal of derision by Mr. Butler and quite frankly I don't present cases to the Court that I think are going to result in derision so I accept that statement -- that condition and assumed that that would be the *413 fact.
Thus, it is clear that the parties to the divorce case considered the distributions made by West & Bliss to Mr. Bliss that were booked as "loans" to constitute compensation to Mr. Bliss. Petitioner argues, based upon her testimony at trial before this Court, that she never saw the documents discovered from West & Bliss or the pleadings filed in the divorce action, or, if she saw them, that they are so complex that she did not understand them. She also asserts that she left the divorce proceedings entirely to her attorneys and was not given any information by her divorce attorneys that reasonably put her on notice that Mr. Bliss's gross income was understated on the couple's 1982 joint return. She further argues that any knowledge possessed by her attorneys should not be imputed to her. We do not credit petitioner's testimony that, before signing the couple's joint return, she did not see the documents discovered by her divorce attorneys from West & Bliss and that she did not see the pleadings filed in the divorce case, including Mr. Bliss's affidavit and the Joint Pretrial Statement. Petitioner's testimony is contradicted by the testimony of her divorce attorney, Mr. *414 Butler. He noted that at the bottom left-hand corner of each of those documents there is a hand written "cc" followed by a date. He testified that the "cc" probably meant "copy to client" and the date "would be my then secretary's method of showing that." Accordingly, it appears that the discovery obtained from West & Bliss was sent to petitioner on November 24, 1982, and that the affidavit submitted by petitioner's former husband in the divorce action and the Joint Pretrial Statement were sent to petitioner on January 12, 1983. We so find. We also reject petitioner's contention that the documents discovered during the divorce case and the pleadings in that case were too "complex" for petitioner to understand, and we reject her contention that she did not have sufficient educational background or sophistication to understand them. To the contrary, from our observation of petitioner, she seemed highly intelligent. Moreover, the issue in the divorce case was basic: How much money would Mr. Bliss receive from his law firm in 1982. The 1982 ledger clearly shows that in the first 10 months of the year he received salary of $ 60,000 and loans of $ 29,363.26, for a total of $ 89,363.26. *415 Mr. Bliss's affidavit and the joint pretrial statement confirm that he expected to receive more than $ 6,000 per month. Further, petitioner's testimony in this case demonstrates a full understanding of the issues in the divorce case, and a particular concern that, during the long separation, she had not received a fair amount of support. Finally, we do not credit petitioner's testimony that after she retained Mr. Butler "I left it there and I just didn't bother with it." In this regard, we note that Mr. Butler's associate, Ms. Clark, who dealt with petitioner much of the time, did not testify in this case. Even if we were to accept petitioner's testimony that she did not review or understand the discovery and pleadings in the divorce case, it is clear that she was present on December 8, 1982, when her lawyers negotiated an agreement to limit her liability for 1982 income taxes to $ 5,500. That agreement was made necessary by the fact that Mr. Bliss anticipated owing an additional $ 11,000 in Federal income taxes when the "loans" from West & Bliss were recharacterized as salary. Under paragraph 24 of the Separation Agreement that was negotiated between the parties on December *416 8, 1982, petitioner agreed to reimburse Mr. Bliss for $ 5,500 of the additional income taxes that they anticipated would be due when the 1982 return was filed. Petitioner also agreed to give a promissory note secured by a deed of trust on her house to satisfy that promise. We infer, based upon the negotiations that took place on December 8, 1982, that petitioner understood the amount of income taxes that the couple anticipated owing for 1982 and her share of that liability. Petitioner admitted during her testimony in this case that "when it was over I just talked to [Ms. Clark] a little bit about what, you know the tax thing." We believe that, in June 1983, when Mr. Bliss presented the couple's joint 1982 return to petitioner for review and execution, she either knew or should have known that his income was understated. The return claims a tax refund of $ 6,875. This was a significant change from the additional tax liability of $ 11,000 that the divorce lawyers and their clients had discussed on December 8, 1982. Page one of the return lists "wages, salaries, tips, etc." in the amount of $ 71,171. Thus, without further review of the return, petitioner was put on notice that *417 the return reported earnings from West & Bliss of less than $ 6,000 per month. All of the information obtained in the divorce proceedings and in the settlement discussions on December 8, 1982, indicated to petitioner that Mr. Bliss anticipated earning more than $ 6,000 per month from West & Bliss. A final point should be noted. Petitioner argues, based upon paragraph 24 of the Separation Agreement, that she expected the couple's entire 1982 tax liability to be $ 11,000, and that she thought that the return that Mr. Bliss presented to her was correct because the aggregate tax liability was $ 13,332, only "slightly more than the $ 11,000 tax liability threshold referred to in the Separation Agreement." To the contrary, as Mr. Bliss's testimony in this case and petitioner's own actions make clear, petitioner and her former husband intended the $ 11,000 amount to refer to the additional tax that would be due when they filed their 1982 return. They did not intend it to refer to the couple's entire tax liability. If they had so intended, petitioner would have been required to pay $ 5,500 to Mr. Bliss even though the return claimed a refund. As it was, petitioner and Mr. Bliss split *418 the refund, one-half each. Negligence Addition Under Section 6653(a)
Respondent determined that petitioner is liable for additions to tax pursuant to section 6653(a)(1) and (2). Respondent determined that the entire underpayment was due to negligence. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment for the year is due to a taxpayer's negligent or intentional disregard of respondent's rules or regulations. Section 6653(a)(2) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to any portion of the underpayment that is attributable to negligence or intentional disregard of the rules or regulations. Petitioner bears the burden of disproving respondent's determination that the entire underpayment was due to negligence or intentional disregard of respondent's rules or regulations. Rule 142(a). Petitioner introduced no evidence concerning this issue. Accordingly, we sustain respondent's determination of the additions to tax under section 6653(a)(1) and (2). Addition For Substantial Understatement Of Income Tax under Section 6661
Respondent determined *419 that petitioner is liable for the addition to tax under section 6661(a). Section 6661(a) imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a "substantial understatement" of income tax for the taxable year. In the case of a noncorporate taxpayer, any understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). Petitioner bears the burden of disproving respondent's determination. Rule 142(a). Petitioner introduced no evidence concerning this issue. Accordingly, we sustain respondent's determination of the addition to tax under section 6661. Decision will be entered for respondent.