T.C. Summary Opinion 2005-84

UNITED STATES TAX COURT

SHUANG-DI SUN BENNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6291-03S.                    Filed June 16, 2005.

Shuang-Di Sun Bennett, pro se.

<u>Elaine T. Fuller</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of sections 6330(d) and 7463 of the Internal Revenue Code in effect when the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), in which respondent sustained a proposed levy to collect petitioner's unpaid 1998 tax liability following an administrative hearing. The issues for decision are: (1) Whether, in the context of this collection action, petitioner is liable for the underlying tax for the taxable year 1998 and, if so, (2) whether respondent may proceed with collection.

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated by this reference. At the time of filing the petition, petitioner resided in Monterey Park, California.

Petitioner is a native of Shanghai, China. In December 1993, petitioner married Alva D. Bennett (Mr. Bennett), a U.S. citizen, and she immigrated to the United States in September 1994. As described by petitioner, Mr. Bennett went to Shanghai to marry her, and then "picked [her] up from the airport" a little less than a year later. At some point in 1999, petitioner discovered that Mr. Bennett was having an extramarital affair. Petitioner suspects that the extramarital affair began much earlier than 1999. Petitioner continued to reside in the same

house as Mr. Bennett until May 8, 2000, the date their divorce became final.

Petitioner spoke little or no English when she immigrated to the United States. Even at the time of trial petitioner had somewhat limited proficiency in English. She placed her trust in and completely relied on Mr. Bennett to manage their household and financial matters. She often signed documents at the request of Mr. Bennett without knowing or understanding what she was signing. During the year at issue, Mr. Bennett was employed as general manager of and possibly had an ownership interest in Premium Fresh Juice & Food Co. (Premium Fresh Juice).

During the tax year 1998, petitioner and Mr. Bennett were married and living together in California, a community property State. Petitioner and Mr. Bennett filed separate Federal income tax returns for 1998, each claiming a filing status of married filing separately. Petitioner's 1998 return provided Mr. Bennett's name and Social Security number. The return reported gross income of $34,288 ($31,385 of taxable wages, $723 of taxable interest, and $2,180 from a taxable IRA distribution), a total tax of $3,372, total payments of $624, and a tax due of $2,870.[1] Attached to her 1998 return was a Form W-2, Wage and Tax Statement, from Columbia Cleaning Co. (Columbia Cleaning),

---

[1] The tax due reflected a $122 estimated tax penalty. Petitioner claimed $8,546 in itemized deductions for the year and a deduction of $2,000 for an IRA contribution.

reporting that petitioner was paid wages of $19,384.68 in 1998.[2]
Petitioner failed to pay the amount of tax reported on her 1998
return.

Petitioner's 1998 return was prepared by a professional tax
preparer on October 20, 1999, and petitioner purportedly signed
and dated it on October 21, 1999.  However, her return was not
filed until December 13, 2000, a date occurring after petitioner
and Mr. Bennett were divorced.  She had not previously filed an
application for an extension of time to file a return.
Respondent accepted petitioner's return as it was filed and
assessed the income tax liability reported therein as well as an
addition to tax for filing a delinquent return, an addition to
tax for failing to pay a tax shown on a return, and interest.
Respondent did not issue petitioner a statutory notice of
deficiency for 1998.  Although petitioner was a married
individual living in a community property State and filed a
return as "married filing separately", respondent did not
determine or assess a tax based upon her one-half share of
community income.

On his separate 1998 return, also filed on December 13,
2000, Mr. Bennett reported gross income of $57,138, taxable
income of $50,534, and a total tax due of $11,394.  Mr. Bennett's

---

[2]  Other third-party information reported that petitioner
earned wages of $13,626 in 1998.

1998 return was not introduced into the record. Transcripts of account reflect that Mr. Bennett's gross income included $40,054 of wages and $4,834 of taxable interest, and he claimed $1,904 in itemized deductions. Mr. Bennett also failed to pay the amount of tax reported on his separate return, and respondent assessed the tax liability reported therein. As with petitioner's return, respondent did not determine or assess a tax based on Mr. Bennett's share of community income. Respondent has initiated a separate collection activity against Mr. Bennett.[3]

On February 12, 2001, respondent issued to petitioner a written request for payment of her 1998 tax liability. Petitioner contacted respondent to discuss her tax liability. In correspondence received by respondent on November 20, 2001, petitioner wrote:

> 1) * * * I also never worked for Columbia Cleaning Company. My ex-husband had partners who ownd [sic] this company and he told them to prepare this W-2 form.
>
> 2) My ex-husband prepared the '98 & '99 tax forms for me to sign and I didn't know what I was signing.
>
> 3) I went to Columbia Cleaning Company on 11-19-01 and asked them for an amended W-2 form but they refused to give me one.

---

[3] The collection of Mr. Bennett's unpaid 1998 tax liability, as assessed, is not at issue in this case. The income reflected on Mr. Bennett's return is relevant only for purposes of determining petitioner's underlying tax liability under California's community property laws.

On June 17, 2001, petitioner submitted an amended 1998 return, on which she reported no taxable income, no taxes withheld, and a tax liability of zero. Petitioner did not submit a corrected Form W-2 with the amended return. Petitioner's amended 1998 return was received on June 17, 2001, but respondent did not process the amended return.

On March 12, 2002, respondent issued to petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, on which petitioner stated, in pertinent part:

> I came to U.S.A. 9-1-1994 and I have never worked at all. My ex-husband put me on his partner's company payroll for insurance but I have never received any pay from any source. * * * He prepared the tax form for my signature and I signed it without looking at or understanding the form. I had no income from any job in 1998. My request for an amended W-2 Form was refused. * * *

On September 10, 2002, an administrative hearing was held between petitioner and a hearing officer from the IRS Office of Appeals. On March 21, 2003, respondent issued to petitioner the notice of determination. In the notice, respondent determined that it was appropriate to proceed with collection. The notice provided the following explanation, in pertinent part:

> The taxpayer appeared for the conference and reiterated the argument presented in the Request for a Collection Due Process Hearing. The taxpayer was given an opportunity to provide evidence to support her argument that she did not earn wages [from] her former husband's

company.  The taxpayer failed to respond.  A follow-up
letter was sent on January 20, 2002 but was returned
undeliverable.  The follow-up letter was sent a second
time on February 6, 2003 in case the Post Office made a
mistake.  The follow-up letter was returned again
undeliverable.  I am processing this case based on the
facts in the file since the taxpayer has failed to
provide any evidence.

No other issues were raised.  Compliance followed the
proper procedures.

Petitioner timely filed with the Court a petition for lien and
levy action pursuant to section 6330(d).[4]

At trial, respondent introduced into the record paychecks
made out to petitioner in 1998.  The paychecks included 12 checks
from Trojan Management Co. (Trojan Management) totaling $10,099
and 41 checks from Columbia Cleaning totaling $15,757.12.[5]
Executive officers from Trojan Management and Columbia Cleaning
testified that they issued paychecks to petitioner as payroll
agents for Premium Fresh Juice and that petitioner did not work

---

[4]  We note that respondent filed a motion for summary
judgment on Nov. 14, 2003, on the basis that petitioner could not
challenge a self-assessed tax liability under sec. 6330(c)(2)(B).
Following this Court's Opinion in Montgomery v. Commissioner, 122
T.C. 1 (2004), we denied respondent's motion for summary
judgment.  By order dated Jan. 27, 2004, we remanded this case to
the IRS Appeals Office for further consideration of the
underlying tax liability reported on petitioner's original
return.  In a status report, filed Mar. 29, 2004, respondent
advised that upon reconsideration he had concluded that
petitioner was liable for the full tax and penalty as assessed.

[5]  The checks purported to represent net wages after
withholding of taxes and other miscellaneous deductions.

for either Trojan Management or Columbia Cleaning in 1998.[6] Furthermore, in their capacity as payroll agents, they did not independently verify whether petitioner performed services for Premium Fresh Juice but issued paychecks to her based solely on payroll information provided to them by Mr. Bennett. As explained by the president of Trojan Management: "Mr. Bennett asked us to put Ms. Bennett on our payroll, and the juice company would reimburse us, plus pay us our profit that we normally charge for such services".

The paychecks were deposited into joint bank accounts belonging to petitioner and Mr. Bennett at Bank of America and Mercantile National Bank. Petitioner had signatory authority on these joint accounts. Petitioner examined the paychecks and stated that the endorsement signatures were not hers. Respondent admitted that there was a "substantial question about whether [the endorsements were] petitioner's signature".

In addition to the joint bank accounts, petitioner maintained a separate bank account at Bank of America in 1998. Petitioner kept a modest combined balance in standard checking and regular savings accounts ranging from a combined balance of approximately $600 to $3,641. Petitioner also maintained

---

[6] The function of payroll agent was explained at trial by the president of Trojan Management: "Trojan Management provided payroll services, where we prepared payroll checks, payroll tax deposits, for Mr. Bennett's company, Premium Fresh Juice."

certificate of deposit accounts at Bank of America with a combined balance ranging from approximately $10,000 to $12,050 during the year.  Most of the deposits into petitioner's individual accounts came from checks written by Mr. Bennett from their joint bank accounts.[7]

## Discussion

### I.  General Rules--Lien and Levy

Section 6331(a) authorizes the Commissioner to levy upon property and property rights where a taxpayer liable for taxes fails to pay them within 10 days after notice and demand for payment.  Before the Commissioner can proceed with a levy, section 6331(d) requires the Secretary to send to the taxpayer a written notice of intent to levy, and section 6330 entitles the taxpayer to an administrative hearing conducted by an impartial hearing officer from the Office of Appeals.

Section 6330(c)(2)(A) provides that the taxpayer may raise any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the intended collection action, and alternative means of collection.  Additionally, the taxpayer may challenge the existence or amount of the underlying tax liability, including a liability reported by the taxpayer on an

---

[7]  Petitioner earned $608 of the taxable interest in 1998 from her accounts at Bank of America.

original return, if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B); see also Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004).

A taxpayer may appeal the Commissioner's administrative determination to this Court, and we have jurisdiction with respect to such an appeal so long as we generally have jurisdiction over the type of tax involved in the case.  Sec. 6330(d); Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  If the underlying tax liability is properly at issue, the Court will review that issue de novo.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000). If the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's determination for abuse of discretion.  See Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.

We have jurisdiction over petitioner's appeal because the underlying tax liability relates to Federal income taxes.  See sec. 6330(d)(1); Montgomery v. Commissioner, supra at 9-10; Landry v. Commissioner, 116 T.C. 60, 62 (2001).  At her administrative hearing, petitioner challenged the existence of her underlying tax liability.  Since petitioner did not receive a statutory notice of deficiency and did not otherwise have an

opportunity to challenge her tax liability before her administrative hearing, we review petitioner's underlying tax liability de novo.

In a trial de novo, our findings and conclusions concerning a taxpayer's liability must be based on the merits of a case without deference to the determination reached at the administrative level.  See Ewing v. Commissioner, 122 T.C. 32, 37-38 (2004); Jones v. Commissioner, 97 T.C. 7, 18 (1991).  Although petitioner resided in a community property State and filed her return as "married filing separate", respondent did not determine or assess a tax based upon petitioner's share of community income and, consequently, there was no consideration of the issue in the notice of determination.  Since our task in a trial de novo is to arrive at a conclusion of the correct amount of a taxpayer's underlying tax liability, we apply Federal income tax principles as they relate to the taxpayer's share of community income.

II.  De Novo Review of Petitioner's Underlying Tax Liability

A.  Community Property--General Rules

Generally, a spouse residing in a community property State has a vested interest in and is owner of one-half of both spouses' community property.  United States v. Mitchell, 403 U.S. 190, 196 (1971).  California law defines community property as all property, real or personal, wherever situated, acquired by a

married person during the marriage while domiciled in California. Cal. Fam. Code sec. 760 (West 2004). Under California law, there is a rebuttable presumption that all property acquired during marriage is community property. Hanf v. Summers, 332 F.3d 1240, 1242-1243 (9th Cir. 2003); Haines v. Haines, 39 Cal. Rptr. 2d 673, 681 (Ct. App. 1995). It follows that there is a rebuttable presumption that all income derived during the marriage while domiciled in California is community property. See, e.g., Dooley v. Commissioner, T.C. Memo. 1992-39. Since Federal income tax liability follows ownership with respect to income, there is a rebuttable presumption that any income derived in a marriage in California is taxable as community income. See United States v. Mitchell, supra at 197.

Spouses who reside in a community property State may file either a joint Federal income tax return or separate Federal income tax returns. If separate returns are filed, then generally each spouse must report and pay tax on one-half of the community income, regardless of whether the spouse actually received that income. Id. at 196-197; Hardy v. Commissioner, 181 F.3d 1002 (9th Cir. 1999), affg. T.C. Memo. 1997-97; Bernal v. Commissioner, 120 T.C. 102, 105-106 (2003).

B. Petitioner's Community Income

The potential sources of community income in this case are: (1) The items of income reported on petitioner's return totaling

$34,288 and (2) the items of income reported on Mr. Bennett's return totaling $57,138. Unless petitioner can rebut the presumption under California law that these items are community property, the Bennetts' total community income for 1998 was $91,426, and petitioner's one-half share of community income was $45,713, as follows:

| Item of Community Income | Total Amount | Petitioner's Share |
|---|---|---|
| Petitioner's "wages" | $31,385 | $15,692.50 |
| Petitioner's interest | 723 | 361.50 |
| Petitioner's IRA | 2,180 | 1,090.00 |
| Total (petitioner) | 34,288 | 17,144.00 |
| Husband's wages | 40,054 | 20,027.00 |
| Husband's interest | 4,834 | 2,417.00 |
| Husband's other income | 12,250 | 6,125.00 |
| Total (husband) | 57,138 | 28,569.00 |
| Petitioner's share of community income | | $45,713.00 |

There is no evidence in the record to rebut the presumption that any of the items of income listed above were community property. While petitioner contends that she did not work for Premium Fresh Juice in 1998 and that she should not owe taxes on any portion of the $31,385 in wages, she does not dispute that paychecks were issued in her name and deposited into joint bank accounts over which she had signatory authority. As a result, legal title to the purported wages passed to the Bennetts in 1998, and they are properly included in the Bennetts' community income for 1998.[8]

_____

[8] There is no evidence in the record that Premium Fresh
(continued...)

III.  Statutory Relief Under Section 66

Having concluded that petitioner's share of community income is $45,713, we consider the application of section 66.  Under certain circumstances, section 66 provides that a taxpayer may be relieved of liability on community income.  Section 66(a) addresses the treatment of community income in the case of spouses who live apart.  Section 66(b) allows the Secretary to disallow the benefits of community property laws if the taxpayer acted as if he or she were solely entitled to the income and failed to notify his or her spouse of the nature and amount of the income before the due date for filing the return.  Section 66(c) provides a taxpayer with relief if certain circumstances are satisfied.

Under the circumstances of the present case, petitioner is not eligible for the type of relief provided by section 66(a) and (b).  Section 66(a) does not apply because petitioner and Mr. Bennett lived together in 1998.  Section 66(b) allows the Commissioner to disregard the benefits of community property laws, and in the present case, petitioner is seeking relief from

---

[8](...continued)
Juice considered any of the payments as improper or illegally issued.

community income.[9]  Consequently, we need to consider only relief

under section 66(c).

To qualify for statutory relief under section 66(c),

petitioner must satisfy all four conditions provided in

paragraphs (1)-(4) of section 66(c).  In particular, section

66(c) provides:

> SEC. 66(c).  Spouse Relieved of Liability in
> Certain Other Cases.-- Under regulations prescribed by
> the Secretary, if--
>
> (1) an individual does not file a joint
> return for any taxable year,
>
> (2) such individual does not include in
> gross income for such taxable year an item of
> community income properly includible therein
> which, in accordance with the rules contained
> in section 879(a), would be treated as the
> income of the other spouse,
>
> (3) the individual establishes that he
> or she did not know of, and had no reason to
> know of, such item of community income, and
>
> (4) taking into account all facts and
> circumstances, it is inequitable to include
> such item of community income in such
> individual's gross income,
>
> then, for purposes of this title, such item of
> community income shall be included in the gross income
> of the other spouse (and not in the gross income of the
> individual).  Under procedures prescribed by the
> Secretary, if, taking into account all the facts and
> circumstances, it is inequitable to hold the individual
> liable for any unpaid tax or any deficiency (or any

---

[9]  Sec. 66(b) is not a relief provision and can be used only by the Commissioner to disallow the benefits of community property laws to a taxpayer.  It cannot be used by a taxpayer to claim relief from community property.

portion of either) attributable to any item for which relief is not available under the preceding sentence, the Secretary may relieve such individual of such liability.

A.  The Items of Community Income From Petitioner's Return Fail To Satisfy Section 66(c)(2)

Section 66(c)(2) provides that petitioner must not have included in gross income an item of community income properly includable therein, which, in accordance with the rules contained in section 879(a), would be treated as the income of Mr. Bennett. As it relates to the items of community income reflected on her 1998 return ($31,385 of "wages", $723 of taxable interest, and $2,180 of IRA distributions), petitioner fails to satisfy either of the conditions for relief under section 66(c)(2).

The first condition, that petitioner must not "include in gross income for such taxable year an item of community income properly includible therein", is not satisfied because petitioner's original 1998 return reported the items of community income from which she seeks relief.  Although petitioner subsequently submitted an amended "zero return" claiming no income, this amended return does not negate the filing of the original return.

Even if her amended return were sufficient to satisfy the first requirement of section 66(c)(2), petitioner would not satisfy the second requirement that the items of community income "would be treated as the income of the other spouse" in

accordance with the rules provided in section 879(a).  Section 879(a) provides that (1) "earned income"[10] is attributable to the spouse who performed the services; (2) trade or business income is attributable in accordance with section 1402(a)(5); (3) community income not described in either (1) or (2) which is derived from the spouse's separate property is attributable to that spouse; and (4) all other items of community income are attributable in accordance with the applicable community property law.  We conclude that the correct classification of all the items of community income reported on petitioner's return is under the category of "other such community income" under section 879(a)(4).  Although payroll agents acting on behalf of Premium Fresh Juice reported that petitioner earned $31,385 of wages in 1998, the payroll agents did not verify that petitioner performed services for Premium Fresh Juice and acted solely on the basis of payroll information submitted to them by Mr. Bennett. Petitioner's testimony that she never worked for Mr. Bennett's company was credible, and as a result, we find that the $31,385 is correctly classified as "other such community income" rather than wages.  The taxable interest and the IRA distribution also

---

[10]  For purposes of sec. 879(a), "earned income" is defined by reference to sec. 911(d)(2), which provides that the term means "wages, salaries, or professional fees, or and other amounts received as compensation for personal services actually rendered".

do not fit one of the other categories of section 879(a), and are also classified as "other such community income".

Other such community income is treated under the applicable community property law.  Therefore, the half of the $34,288 of community income reported on petitioner's return, or $17,144, cannot be treated as Mr. Bennett's income, and she is not entitled to further relief under section 66(c)(2).

B.  The Items of Community Income From Mr. Bennett's Return Fail To Satisfy Section 66(c)(3)

Section 66(c)(3) provides that petitioner must establish that she did not know, and had no reason to know, of the community income.  With regard to the items of community income reflected on Mr. Bennett's return ($40,054 of wages, $4,834 of taxable interest, and $12,250 of other income), petitioner does not satisfy section 66(c)(3).

A taxpayer's knowledge of an item of community income must be determined with reference to her knowledge of the particular income-producing activity.  See McGee v. Commissioner, 979 F.2d 66, 70 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Hardy v. Commissioner, T.C. Memo. 1997-97, affd. 181 F.3d 1002 (9th Cir. 1999).  Petitioner was aware that Mr. Bennett was employed by Premium Fresh Juice and was aware that his wages were used to pay their household living expenses.  While petitioner may not have known the precise amount of Mr. Bennett's salary, she had knowledge of his employment.  Accordingly, we find that

petitioner knew, or had reason to know, about Mr. Bennett's wages of $40,054.

Similarly, in regard to her share of the $4,834 of taxable interest, petitioner was aware that the couple had joint bank accounts.  As a result, petitioner knew, or had reason to know, of the taxable interest income.

With regard to her share of the remaining $12,250 of unidentified community income, we do not have enough information to evaluate whether petitioner knew or had reason to know of this income.  Therefore, for purposes of section 66(c)(3), petitioner has not established that she did not know, and had no reason to know, of the unidentified income.

Accordingly, we hold that she is not entitled to relief from any of the items of community income reported on Mr. Bennett's return under section 66(c)(3).

IV.  <u>Equitable Relief Under the Flush Language of Section 66(c)</u>

The flush language of section 66(c) provides:

Under procedures prescribed by the Secretary, if,
taking into account all the facts and circumstances, it
is inequitable to hold the individual liable for any
unpaid tax or any deficiency (or any portion of either)
attributable to any item for which relief is not
available under the preceding sentence, the Secretary
may relieve such individual of such liability.[11]

---

[11]  The flush language providing equitable relief was added
to sec. 66(c) as part of the Internal Revenue Service
Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201,
112 Stat. 734, the same section of the same legislation that
(continued...)

Generally, a spouse has to submit a request for relief under the equitable relief provision of section 66(c) on Form 8857, Request for Innocent Spouse Relief. See Rev. Proc. 2003-61, 2003-2 C.B. 296; Rev. Proc. 2000-15, 2000-1 C.B. 447. However, since respondent did not seek until trial to collect a tax based upon community property principles, petitioner had no reason to submit a Form 8857 or request equitable relief until trial. Since respondent did not consider equitable relief for petitioner under section 66(c), we view section 66(c) as an affirmative defense and may review respondent's denial of that relief. See Rules 39, 41(a); Butler v. Commissioner, 114 T.C. 276, 287-288 (2000) (discussing jurisdiction under section 6015(f)).

We review the Commissioner's denial of equitable relief under section 66(c) under an abuse of discretion standard. Beck v. Commissioner, T.C. Memo. 2001-198. We previously stated that our determination of petitioner's tax liability takes place in a trial de novo. See supra p. 11. Where the Commissioner has not previously considered equitable relief, and our review of the Commissioner's determination is for an abuse of discretion in a trial de novo, we have jurisdiction to determine whether

---

[11](...continued)
created the similar equitable relief provision under sec. 6015(f). Accordingly, cases interpreting our jurisdiction under sec. 6015(f) provide guidance on interpreting our jurisdiction under the equitable relief provision of sec. 66(c). See Beck v. Commissioner, T.C. Memo. 2001-198.

equitable relief is appropriate.  See Ewing v. Commissioner, 122 T.C. at 38-39, 43-44 (discussing jurisdiction under section 6015(f)).  Our determination is not limited to matter in the administrative record, and we consider equitable relief within the guidelines that the Commissioner has published.  Id. at 43-44.

As directed by section 66(c), the Secretary has prescribed factors in Rev. Proc. 2003-61, supra,[12] that the Commissioner will consider in determining whether an individual qualifies for equitable relief under the flush language of section 66(c).  Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, provides a "nonexclusive list of factors" that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the spouse requesting relief liable for all or part of the unpaid tax liability.  Rev. Proc. 2003-61, sec. 4.03(2)(a), provides that the following factors are relevant to whether the Commissioner will grant equitable relief:  (1) Marital status, (2) economic hardship, (3) knowledge or reason to know, (4) the nonrequesting

_____

[12] Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447.  Rev. Proc. 2003-61, supra, is effective for requests for relief filed on or after Nov. 1, 2003, and for requests for relief pending on Nov. 1, 2003, for which no preliminary determination letter has been issued as of Nov. 1, 2003.  Because respondent has not issued a determination letter in this case regarding equitable relief under sec. 66(c), Rev. Proc. 2003-61, supra, applies to this case.

spouse's legal obligation, (5) significant benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health.  Further, Rev. Proc. 2003-61, supra, provides that no single factor will be determinative, but that all relevant factors, regardless of whether the factor is listed in Rev. Proc. 2003-61, sec. 4.03, will be considered and weighed.

A.  Marital Status

Rev. Proc. 2003-61, supra, provides that petitioner's marital status is a factor in determining whether a spouse should be granted equitable relief.  Petitioner and Mr. Bennett divorced on May 8, 2000, and her divorce weighs in favor of granting equitable relief under section 66(c).

B.  Economic Hardship

Whether a spouse will suffer economic hardship if equitable relief is not granted under section 66(c) is a factor which may be considered pursuant to Rev. Proc. 2003-61, supra.  Economic hardship exists if a levy will cause a taxpayer to be unable to pay his or her reasonable basic living expenses.  Sec. 301.6343-1(b)(4), Proced. & Admin. Regs.

In this case, we are unable to properly evaluate whether petitioner would suffer economic hardship if equitable relief were not granted.  While petitioner testified that she was economically dependent upon Mr. Bennett during their marriage, we are not aware of petitioner's current employment situation or

expenses.  Given the paucity of information in the record, we view this factor as neutral.

     C.  <u>Knowledge or Reason To Know</u>

A spouse's knowledge, or reason to know, of the income from which she seeks relief is a factor in determining whether the spouse should be granted equitable relief.  In evaluating whether a spouse had reason to know of an item of community income, Rev. Proc. 2003-61, <u>supra</u>, provides that we may consider the spouse's level of education, any deceit or evasiveness, the spouse's degree of involvement in the activity generating the tax liability, her involvement in business and household financial matters, and her business or financial expertise.

Petitioner was undeniably an unsophisticated spouse with respect to business and household financial matters.  Petitioner did not speak English when she immigrated to the United States in 1994 and had no prior experience with financial matters or with running a household.  Further, it is undeniable that Mr. Bennett exercised complete control over their financial matters.  Mr. Bennett filed income tax returns and was responsible for virtually all matters relating to their household finances. Petitioner often signed documents at the request of Mr. Bennett without knowing or understanding what she was signing.  Mr. Bennett forbade petitioner to open mail that arrived at their home, to review bank statements from their joint bank accounts,

and to withdraw money or to write checks from their joint bank accounts.[13]

1. <u>Knowledge, or Reason To Know, About the Items of Community Income Reported on Petitioner's Return</u>

Petitioner did not argue that she did not know about the $723 of interest income or the $2,180 in distributions from her IRA that were reported on her return.

However, with respect to the $31,385 of wages petitioner purportedly earned from Premium Fresh Juice, petitioner testified that Mr. Bennett placed her on his company's payroll without her knowledge.[14] In evaluating whether petitioner knew, or had

---

[13] We have granted relief from joint and several liability on a joint return in cases involving an unsophisticated spouse and a controlling spouse who misled, controlled, or hid financial matters from the unsophisticated spouse. See, e.g., <u>Guth v. Commissioner</u>, 897 F.2d 441, 442 (9th Cir. 1990), affg. T.C. Memo. 1987-522; <u>Price v. Commissioner</u>, 887 F.2d 959 (9th Cir. 1989); <u>Laird v. Commissioner</u>, T.C. Memo. 1994-564. These cases involved relief from joint and several liability on a joint return pursuant to former sec. 6013 and sec. 6015 rather than relief under sec. 66. However, we believe that interpretations of spousal relief from joint liability are instructive to our interpretation of equitable relief from community income. See, e.g., <u>Beck v. Commissioner</u>, T.C. Memo. 2001-198.

[14] Although we previously concluded that petitioner had knowledge or reason to know of Mr. Bennett's wages from Premium Fresh Juice for purposes of sec. 66(c)(3) because a taxpayer's knowledge of a particular item of community income is determined with reference to knowledge of a particular income-producing activity, see <u>supra</u> pp. 18-19, that conclusion has no bearing on the wages purportedly earned by petitioner. Although both petitioner's purported wages and Mr. Bennett's wages were from Premium Fresh Juice, they are distinctly different. We have concluded that petitioner, unlike Mr. Bennett, did not perform services for Premium Fresh Juice and, thus, amounts paid to her
(continued...)

reason to know, about the purported wages from Premium Fresh Juice, we must determine: (1) Whether the payroll checks issued in petitioner's name and deposited into petitioner and Mr. Bennett's joint bank account gave petitioner knowledge, or reason to know, of the purported wages, (2) whether petitioner's 1998 return, which reported these wages from Premium Fresh Juice, gave petitioner knowledge, or reason to know, of the purported wages, and (3) whether the Form W-2 issued to petitioner from Columbia Cleaning (as payroll agent for Premium Fresh Juice) gave petitioner knowledge, or reason to know, of the purported wages.

Although the payroll checks were issued in petitioner's name and deposited into joint accounts with her purported endorsement signature, petitioner testified that she never saw, and certainly did not endorse for deposit, the payroll checks. Further, petitioner testified that she did not have access to monthly bank statements and was forbidden by Mr. Bennett to access the accounts. We found petitioner's testimony to be credible and trustworthy. Given Mr. Bennett's position as general manager of Premium Fresh Juice, and his control over their household and

---

[14](...continued)
from Premium Fresh Juice are not wages. In addition, there is no indication that petitioner's purported wages were actually the wages of Mr. Bennett. Accordingly, we do not impute to petitioner knowledge of the $31,385 of purported wages reported on her return by virtue of the fact that Mr. Bennett worked for the company.

financial matters, we conclude that petitioner did not have knowledge about the purported wages reported in her name from Premium Fresh Juice.

A taxpayer may be charged with constructive knowledge of the content of a return even when he or she signs an original return without reviewing or understanding its contents. Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Levin v. Commissioner, T.C. Memo. 1987-67. The appropriate standard to be applied in determining whether a taxpayer has constructive knowledge is whether a reasonable person under the circumstances of the taxpayer at the time of signing the return could be expected to know. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979); Levin v. Commissioner, supra.[15] As we stated earlier, petitioner was unsophisticated in regard to financial matters, and she had a limited proficiency in English. She frequently signed documents at the request of Mr. Bennett without understanding what she was signing. We do not believe that petitioner willingly turned a blind eye to the contents of her return, but rather that she was not in a position to understand the return and trusted Mr. Bennett to prepare accurate returns on her behalf.

Finally, we conclude that the Form W-2 issued to petitioner from Columbia Cleaning did not provide petitioner with knowledge

---

[15] See supra note 13 and accompanying text.

or reason to know of her purported wages.  We previously found that Mr. Bennett forbade her to open mail and thus, we believe petitioner's testimony that she never saw the Form W-2.

In sum, we conclude that petitioner did not have knowledge, or reason to know, of the $31,385 of purported wages, but that she knew, or had reason to know, of the $723 of taxable interest and $2,180 of income from an IRA distribution.  This factor weighs in favor of equitable relief with respect to the wage income, but against granting equitable relief from the taxable interest and IRA distributions reported on her original return.

2. Knowledge, or Reason To Know, About the Items of Community Property Reported on Mr. Bennett's Return

We have previously held during our discussion on section 66(c)(3) that petitioner had knowledge, or reason to know, about Mr. Bennett's wages and the interest income reported on his return.  With respect to the $6,125 of unidentified income reported on Mr. Bennett's return, we were unable to determine whether petitioner knew of these items, but held for purposes of section 66(c)(3) that petitioner could not establish that she did not know, or have reason to know, about the income.  Thus, in regard to Mr. Bennett's wages and taxable interest, this factor weighs against equitable relief but is relatively neutral with respect to the $6,125 of unidentified income reported on Mr. Bennett's return because we do not have enough information to evaluate her knowledge or reason to know.

D.  Other Spouse's Legal Obligation

No evidence was introduced in the case regarding Mr. Bennett's legal obligation pursuant to a divorce decree or agreement.  We regard this factor as neutral.

E.  Significant Benefit

Whether petitioner received a significant benefit (beyond normal support) from the items of community income is a factor to consider in weighing petitioner's eligibility for equitable relief.  The balances from petitioner's individual bank accounts and joint bank accounts with Mr. Bennett were modest, and even though petitioner had certificates of deposit on account ranging in value from $10,000 to $12,050 during the year, there is no evidence to suggest that petitioner lived a lavish lifestyle or had extravagant expenses.  Rather, Mr. Bennett controlled all of the couple's accounts, regardless of in whose name the account was held.  Therefore, we conclude that petitioner did not receive a significant benefit beyond normal support from the items of community income.

Therefore, this factor weighs in favor of relief from the items of community income from both petitioner's return and Mr. Bennett's return.

F.  Compliance With Income Tax Laws

There is no evidence regarding petitioner's compliance with income tax laws in subsequent years.  This factor is, therefore, neutral.

G.  Abuse

There is no evidence that petitioner was the victim of abuse in this case.  Rev. Proc. 2003-61, 2003-2 C.B. 296, however, provides that the presence of abuse is only a factor which may weigh in favor of equitable relief; the absence of abuse is not a negative factor weighing against equitable relief.  Thus, this factor is neutral in this case.

H.  Mental or Physical Health

At trial, petitioner was extremely emotional and distraught. Petitioner testified that she was financially and emotionally dependent upon Mr. Bennett, and that she became depressed and physically ill when she discovered that Mr. Bennett was engaged in an extramarital affair.  Further, during their marriage, Mr. Bennett exercised control over all facets of petitioner's life, and according to petitioner, would threaten to have her deported to China if she disobeyed him.

On the basis of the record as a whole, we believe that she was suffering from poor mental health.  This factor weighs in favor of granting relief.

I.  Conclusion

In regard to petitioner's share of items of community income reported on her return ($15,692.50 share of "wages", $361.50 of taxable interest, and $1,090 of IRA distribution), petitioner's marital status, lack of knowledge or reason to know of the wages from Premium Fresh Juice, a lack of significant benefit, and poor mental health weigh in favor of granting equitable relief.  There was insufficient evidence for us to evaluate petitioner's economic hardship, Mr. Bennett's legal obligation pursuant to a divorce decree or agreement, and her compliance with income tax laws in subsequent years.  None of the factors under Rev. Proc. 2003-61, supra, weighed against relief with respect to her community share of the wages reported on her return, and the only factor weighing against relief with respect to her community share of the taxable interest and IRA distribution is that she had knowledge or reason to know of them.  Therefore, we conclude that it is inequitable to hold petitioner liable for her share of the purported wages of $15,692.50 reported on her return, but that she remains liable for $361.50 in taxable interest and $1,090 in IRA distributions.

With respect to petitioner's community share of the items of community income reported on Mr. Bennett's return ($20,027 of wages, $2,417 of taxable interest, and $6,125 of other income), the factors weigh as they do for the items on petitioner's

return, except that we hold that she had knowledge, or reason to know, of Mr. Bennett's wages and taxable interest.  It would not be inequitable to hold her liable for the amounts of which she had knowledge or reason to know.  We cannot make a finding about petitioner's knowledge or reason to know of the remaining community share of $6,125 of income reported on Mr. Bennett's return.  Because the source and nature of this other income is uncertain, we cannot find that it is inequitable to hold her liable for this amount.  Therefore, we conclude that petitioner is not entitled to equitable relief with respect to her community share of Mr. Bennett's reported wages of $20,027, her community share of taxable interest reported on his return of $2,417, or her community share of the $6,125 of unidentified income.

In sum, petitioner is liable for tax on gross income of $30,020.50 and is relieved from liability on gross income of $15,692.50 under the flush language of section 66(c).

V.  Addition to Tax

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing due date, including extensions.  Section 6651(a)(2) imposes an addition to tax for failing to pay an amount shown on a return.  An addition to tax under either section 6651(a)(1) or (2) is inapplicable, however, if the

taxpayer's failure to file the return was due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1) and (2).

Respondent has introduced evidence sufficient to establish the appropriateness of imposing additions to tax under section 6651(a)(1) and (2).  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Petitioner's 1998 return was filed December 13, 2000, well after its statutory due date of April 15, 1999, and no application for extension of the filing due date was filed.  The return showed a balance due of $2,748, but petitioner did not remit payment with the return, and the outstanding balance remains unpaid.

Thus, petitioner is liable for additions to tax for filing a delinquent return and failing to pay the tax due unless she can attribute her failures to reasonable cause and not willful neglect.  There are several established principles that operate against petitioner.  First, a taxpayer cannot rely upon his or her spouse to file a return or pay a tax due for purposes of excusing the taxpayer from section 6651 liability.  See James v. Commissioner, T.C. Memo. 1980-99.  Second, even though petitioner did not actually know about the income from Premium Fresh Juice, she is required to file a return and pay taxes based upon her share of community income.  See United States v. Mitchell, 403 U.S. at 196-197.  Consequently, petitioner cannot attribute her

failure to timely file a return and pay tax to reasonable cause and not willful neglect.

Accordingly, respondent is sustained on the imposition of additions to tax under section 6651(a)(1) and (2), but the amounts of the additions to tax must be adjusted to account for our finding that petitioner is not liable for tax on a portion of the community income at issue.

## VI. Collection of Underlying Tax Liability

Respondent's determinations, aside from issues relating to petitioner's underlying tax liability, are reviewed for abuse of discretion. See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181. An abuse of discretion occurs if the hearing officer takes action that is arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Under section 6330(c)(3), the Commissioner's hearing officer is required to consider any relevant issue raised at a taxpayer's administrative hearing, including spousal defenses, challenges to the appropriateness of the intended collection action, and collection alternatives. Aside from challenging her underlying tax liability, petitioner did not directly raise any relevant issue relating to the unpaid tax or the proposed levy. No collection alternatives were discussed. A spousal defense under section 66 has been fully considered during the Court's de novo

review of petitioner's underlying tax liability, and there is no reason to give further consideration to that issue. Respondent's hearing officer obtained verification that any applicable law or administrative procedure was met before making his determination to proceed with collection.

On the basis of the foregoing, we conclude that there was no abuse of discretion by respondent's hearing officer. All the requirements of section 6330 have been satisfied, and respondent may proceed with his proposed collection action as to petitioner's underlying tax liability, as determined by the Court.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

An appropriate order and decision will be entered.