T.C. Summary Opinion 2017-21

UNITED STATES TAX COURT

WINDY W. HARRIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30959-15S.                    Filed March 30, 2017.

<u>Franklin Brand Bredimus, Jr.</u>, for petitioner.

<u>Deborah Aloof</u> and Bradley Hillyer Bentley (student), for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1] Unless otherwise indicated, all subsequent section references are to the
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's joint 2011 Federal income tax of $30,467, substantially all of which is attributable to the disallowance of various deductions claimed on a particular Schedule C, Profit or Loss From Business.[2]  Petitioner requests relief from joint and several liability under section 6015(b) and (c) to the extent that the deficiency relates to the disallowance of the Schedule C deductions.[3]  Thus, the Court must decide whether petitioner qualifies for such relief and, if not, whether the Schedule C activity was engaged in for profit within the meaning of section 183.

_____

[1](...continued)
Internal Revenue Code, as amended and in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] In the notice of deficiency respondent also determined that petitioner received $111 in royalty income in 2011 and adjusted her income accordingly. Petitioner does not dispute this adjustment.  Other adjustments in the notice of deficiency are essentially mechanical in nature.

[3] Petitioner does not request relief from liability to the extent that it relates to the $111 adjustment in royalty income.

## Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

Petitioner resided in the Commonwealth of Virginia at the time that the petition was filed with the Court.

In December 1992 petitioner married Richard A. Harris III. The couple have two children, born in 1995 and 1997. In 2011 petitioner and Mr. Harris separated. In 2012 they entered into a Separation And Property Settlement Agreement (PSA) and then divorced.

In 2005, well before their separation and divorce, petitioner and Mr. Harris moved from Texas to Virginia. The couple purchased a 5.5-acre plot of undeveloped land in Purcellville, Virginia, and built their marital residence and a run-in shed for their horses on the property (marital property).[4]

During their marriage petitioner and Mr. Harris owned four Peruvian Paso horses. Petitioner and Mr. Harris brought the horses from Texas when they moved to Virginia. The horses were kept in the run-in shed on the marital property.

---

[4] The run-in shed was a three-sided shed for shelter that allowed the horses to enter and exit on their own.

Neither petitioner nor Mr. Harris bred, showed, or rented the horses, as the horses were used for personal recreational purposes only. Nor did petitioner or Mr. Harris breed, train, show, rent, or stable horses owned by any third party.

In September 2008 Mr. Harris purchased a 14.8-acre plot of undeveloped land that was adjacent to the marital property. Mr. Harris purchased this additional property with the intent of using it for a cattle ranching activity.

In 2011 Mr. Harris switched from full-time to part-time work as a chief information officer so that he could focus on pursuing his cattle ranching activity. Mr. Harris researched different types of livestock and their profitability, cultivated the land, constructed a fence, and built a 6,000-square-foot barn on the 14.8-acre tract. Mr. Harris also kept and maintained the records for his cattle ranching activity. At no point was petitioner involved in this activity.

The aforementioned 6,000-square-foot barn was not customarily used to stable horses.

During the year in issue and at all other relevant times petitioner worked actively as a real estate agent.

Upon their separation, and pursuant to the PSA, Mr. Harris became the sole owner of the 14.8-acre parcel of property, including the 6,000-square-foot barn,

and petitioner became the sole owner of both the marital property, including the run-in shed, and the couple's horses.

Petitioner and Mr. Harris timely filed a 2011 joint Federal income tax return. Attached to the return were two Schedules C. The first Schedule C related to petitioner's realtor business (realtor Schedule C) and showed petitioner as the sole proprietor. On the realtor Schedule C petitioner reported gross receipts of $163,007, expenses of $58,509, and a net profit of $95,686. The second Schedule C related to the cattle ranching activity and showed petitioner and Mr. Harris as the proprietors of a business named "Harris Stables" (Harris Stables Schedule C). The "Harris Stables" Schedule C reported gross income of $1,598 and a net loss of $133,277 which resulted from a number of deductions, specifically including $123,681 of depreciation on the 6,000-square-foot barn and related appurtenances.

In or about 2013 the Internal Revenue Service commenced an examination of petitioner's 2011 joint return, focusing principally on the "Harris Stables" Schedule C.

In July 2014 respondent received a Form 8857, Request For Innocent Spouse Relief, from petitioner.

Ultimately, in a notice of deficiency dated November 6, 2015, respondent determined a deficiency of $30,467 for 2011. As relevant, respondent disallowed

deductions claimed on the "Harris Stables" Schedule C.[5] See sec. 183. Respondent also denied petitioner's request for innocent spouse relief.

Petitioner timely filed a petition with this Court principally requesting relief from joint and several liability under section 6015(b) and (c).

## Discussion

Married taxpayers may elect to file a joint Federal income tax return in order to obtain more favorable tax rates and other tax benefits. Sec. 6013(a); see sec. 1(a), (d). Generally, each spouse filing the return is jointly and severally liable for the entire tax due. Sec. 6013(d)(3). Nevertheless, an individual who has made a joint return may elect to seek relief from joint and several liability under subsections (b), (c), and (f) of section 6015. Sec. 6015(a), (f). Such relief may or may not be available depending on the particular facts and circumstances of the individual's situation. Except as otherwise provided in section 6015, the taxpayer bears the burden of proof to show his or her entitlement to relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

---

[5] In the notice of deficiency respondent also increased petitioner's income by $111 to reflect a royalty that petitioner received. See supra note 2.

I. Section 6015(b)

Section 6015(b) provides full or apportioned relief from joint and several liability for tax (including interest, penalties, and other amounts) to the extent that such liability is attributable to an understatement of tax. To be eligible for relief, the requesting spouse must establish, inter alia, that in signing the return he or she "did not know, and had no reason to know" of the understatement. Sec. 6015(b)(1)(C), (2). A spouse seeking relief under section 6015(b) has reason to know of the understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the understatement. See Hopkins v. Commissioner, 121 T.C. 73, 77-78 (2003) (citing Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989)).

The understatement of tax on petitioner's joint return is attributable in large part to the disallowance of a substantial deduction for depreciation and other expenses claimed on the "Harris Stables" Schedule C that significantly offset the other income reported on the 2011 return. See Levin v. Commissioner, T.C. Memo. 1987-67. Petitioner acknowledged that before she consented to the filing of the return she reviewed it. Accordingly, we conclude that petitioner knew, or certainly had reason to know, of the understatement and, therefore, does not qualify for relief from joint and several liability under section 6015(b).

II. Section 6015(c)

An election under section 6015(c) treats the former spouses as if they had filed separate returns, and each spouse's liability is limited to that portion of the deficiency properly allocable to the electing spouse. See sec. 6015(c)(1), (d)(3); see also Rowe v. Commissioner, T.C. Memo. 2001-325. According to respondent, the deficiency for 2011 is allocable to petitioner. However, the record shows, and we have so found, that nearly the entire deficiency for 2011 was allocable to Mr. Harris and not to petitioner. See sec. 6015(c); sec. 1.6015-3(d)(3), Income Tax Regs. (stating that the electing spouse has the burden to establish the proper allocation and that none of the applicable limitations applies). In other words, the manner in which the "Harris Stables" Schedule C was denominated and its showing both Mr. Harris and petitioner as proprietors is belied by the fact that only Mr. Harris' cattle ranching activity was the subject of the Schedule C and by the further fact that at no point was petitioner involved in that activity.

Under section 6015(c), a requesting spouse may elect to allocate a deficiency if the following four conditions are met: (1) a joint return was filed; (2) at the time of the election, the requesting spouse is no longer married to the nonrequesting spouse; (3) the requesting spouse elects the application of section 6015(c) no later than two years after the date on which collection activities have

begun; and (4) the deficiency remains unpaid. Respondent does not dispute that these requirements are satisfied.

Relief under section 6015(c) is not permitted if the Secretary is able to demonstrate that the requesting spouse had <u>actual</u> knowledge of "any item giving rise to a deficiency" that is not allocable to the requesting spouse. Sec. 6015(c)(3)(C). In other words, it is respondent's burden to establish that petitioner had actual knowledge of the erroneous deduction on the 2011 tax return.

The item giving rise to the deficiency in this case was a loss resulting from the "Harris Stables" Schedule C deductions. In determining whether a requesting spouse had actual knowledge of an improperly deducted item on the return, more is required than the requesting spouse's knowledge that the deduction appears on the return or that the former spouse operated an activity at a loss. <u>King v. Commissioner</u>, 116 T.C. 198, 205 (2001). A requesting spouse has actual knowledge of an erroneous deduction if the requesting spouse has knowledge of the factual circumstances that made the item unallowable as a deduction. <u>Id.</u> at 204; sec. 1.6015-3(c)(2)(i)(B)(<u>1</u>), Income Tax Regs.

Respondent disallowed the "Harris Stables" Schedule C loss deduction because the activity reported on the Schedule C was not, in respondent's view, engaged in for profit. Although petitioner was aware of the cattle ranching

activity, she did not participate in it in any way.  See Young v. Commissioner, T.C. Memo. 2012-255, at *15 ("[T]he taxpayer assisted minimally in the operation of the activity and was aware that it was not profitable but was granted relief because the Commissioner failed to specifically demonstrate that the taxpayer knew that her former spouse did not have the primary objective of making a profit[.]" (citing King v.Commissioner, 116 T.C. at 205-206)).  Furthermore, respondent failed to demonstrate that petitioner knew that Mr. Harris did not have the primary objective of making a profit.  Accordingly, respondent has failed to establish that petitioner had actual knowledge of the facts that caused respondent to disallow the claimed loss deduction resulting from the cattle ranching activity.  Therefore, we hold that petitioner is entitled to relief from joint and several liability under section 6015(c) for 2011 to that extent.[6]

---

[6] See supra note 3.  Also, given our holding we need not decide whether Mr. Harris operated his cattle ranching activity with the requisite profit objective.  See supra p. 2.

To reflect our disposition of the disputed issue, as well as petitioner's concession,[7]

Decision will be entered

under Rule 155.

---

[7] See supra notes 2 and 3.