T.C. Memo. 2019-55

UNITED STATES TAX COURT

CONSTANCE H. BRILEY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7782-17.                    Filed May 22, 2019.

Charles I. Cate, for petitioner.

Shari A. Salu, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  This matter is before us with respect to respondent's

denial of petitioner's request for spousal relief from joint and several liability

under section 6015[1] for 2004 and 2005 (years involved).

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2]                         FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated

facts are incorporated in our findings.  Petitioner resided in Virginia when she

timely filed her petition.

I.      Petitioner's and Mr. Briley's Backgrounds

Petitioner married Mr. Briley in 1988.  They were married during the years

involved; and although they separated in 2013, they remained married as of the

date of trial.  Petitioner and Mr. Briley filed their 2004 and 2005 Forms 1040, U.S.

Individual Income Tax Return, as married filing jointly.

Petitioner and Mr. Briley both worked during the years involved.  Holding

a degree in industrial psychology, petitioner was employed as a recruiter and

human resources department generalist.  Mr. Briley was the president of Briley

Builders, Inc. (Briley Builders), a Virginia S corporation established in 2002

which built and renovated residential homes.  Mr. Briley was the company's only

employee; it engaged subcontractors to perform the construction work.  Although

Briley Builders never issued stock, petitioner believed she and Mr. Briley were

each 50% shareholders of the company although she now believes Mr. Briley was

---

[1](...continued)
Revenue Code, as amended and in effect at all relevant times.  All dollar amounts
are rounded to the nearest dollar.

**[*3]** the sole shareholder. Petitioner based her original belief on Mr. Briley's representations to her. Again on the basis of his representations, petitioner believed she was an officer of Briley Builders. However, she never participated in the company's business and had no signature authority over its bank accounts. Briley Builders' records were kept in the marital home, but petitioner never sought to look at them.

Petitioner and Mr. Briley kept their finances separate. Petitioner deposited her wages of $45,845 in 2004 and $34,251 in 2005 in her separate bank account. Briley Builders' receipts were deposited in accounts controlled by Mr. Briley. Petitioner and Mr. Briley divided responsibility for their household expenses. Petitioner paid the utility expenses from her bank account, while Mr. Briley paid the family's grocery bills and the mortgage on the marital home using Briley Builders' bank accounts.

Petitioner and Mr. Briley purchased a marital home in 2003 for $650,000. They used $250,000 from the sale of their prior residence as a downpayment and financed the balance. At the time of trial the home was encumbered by at least two liens. The first was a mortgage held by Chase Bank and had an outstanding balance of $407,730 as of February 2017. The second was a home equity loan held by USAA Federal Savings Bank and had an outstanding balance of $348,407

**[\*4]** as of December 2016. And at trial petitioner introduced a deed of trust in favor of her father-in-law. It was dated November 22, 2008, but it was not signed and notarized until November 3, 2009, just over a month after the Internal Revenue Service (IRS) issued a notice of deficiency to petitioner and Mr. Briley with respect to the underlying tax matter. See infra pp 4-6. The deed of trust states that it was made to secure a $300,000 loan from petitioner's father-in-law which was evidenced by a note. The note was not introduced at trial. Petitioner was not making payments on the USAA home equity loan or the alleged note as of the date of trial.

## II.    Petitioner's and Mr. Briley's Underlying Tax Matter

We now turn to the underlying matter which generated petitioner's request for spousal relief. In 2002 Briley Builders paid $121,340 for a residential property in Washington, D.C., which the company renovated and rehabilitated during 2003 and 2004. In 2004 the property was sold for $1,661,000.

Mr. Briley engaged Norman Shaft of the tax return preparation firm Jackson & Hewitt to prepare Briley Builders' 2003, 2004, and 2005 Forms 1120S, U.S. Income Tax Return for an S Corporation, as well as petitioner's and Mr. Briley's joint tax return for 2003 (a year not before the Court), 2004, and 2005. As Briley Builders was an S Corporation, the amounts reported on its Forms

[*5] 1120S passed through to its shareholders and were reported on petitioner and Mr. Briley's joint Forms 1040.

Briley Builders did not capitalize its rehabilitation and construction costs of $289,553, as required by section 263A. Instead, it improperly treated such costs as currently deductible expenses. Because of this improper deduction, as well as other deductions, Briley Builders reported a net operating loss (NOL) of $831,335 for 2003 which respondent disallowed. See infra pp. 4-6. The company carried this NOL to 2004 and 2005. Petitioner and Mr. Briley's 2003 joint Form 1040 reported adjusted gross income of -$784,923, no tax due, and a refund of $3,810.[2]

On Briley Builders' 2004 Form 1120S, the company reported total income of $1,626,680 and ordinary business income of $195,030. An NOL carryforward was erroneously reported on petitioner and Mr. Briley's joint 2004 Form 1040. As a result petitioner and Mr. Briley's joint 2004 Form 1040 reported adjusted gross income of -$445,462 and tax owed of $38,743.

On Briley Builders' 2005 Form 1120S, the company reported total income of $1,026,055 and an ordinary business loss of $91,013. An NOL carryforward was erroneously reported on petitioner and Mr. Briley's joint 2005 Form 1040. As

---

[2]Petitioner and Mr. Briley filed a joint Form 1040X, Amended U.S. Individual Income Tax Return, for 2003. The amended tax return also sought a $3,810 refund.

**[\*6]** a result petitioner and Mr. Briley's joint 2005 Form 1040 reported adjusted gross income of -$488,746, no taxable income, and tax owed of $4,669.

Briley Builders' Forms 1120S were signed by Mr. Briley as the company's president and by Mr. Shaft as the return preparer. Petitioner provided her Forms W-2, Wage and Tax Statement, for 2004 and 2005. She signed the Forms 1040 but did not review them.

III.    The Underlying Tax Court Case

Respondent determined deficiencies in income tax and penalties against petitioner and Mr. Briley with respect to their 2004 and 2005 tax years. On September 23, 2009, respondent issued a notice of deficiency with respect to those determinations. Attached to the notice of deficiency was Form 4549-A, Income Tax Discrepancy Adjustments, stating that Briley Builders had improperly carried forward the alleged 2003 NOL to 2004 and 2005, which in turn improperly offset other income on petitioner and Mr. Briley's income tax returns. The Form 4549-A further stated that Briley Builders had failed to substantiate substantial amounts of deductions claimed on its 2004 and 2005 Forms 1120S.

Petitioner and Mr. Briley mailed a petition to this Court on December 23, 2009, which was filed on December 30, 2009, and assigned docket No. 31182-09. The matter was submitted to the Court for decision on a fully stipulated basis on

**[*7]** September 3, 2013.  Petitioner and Mr. Briley represented themselves.  On

June 10, 2014, the Court rendered its opinion in <u>Briley v. Commissioner</u>, T.C.

Memo. 2014-114, <u>vacated and remanded</u>, 662 F. App'x 305 (4th Cir. 2015).  A

decision was entered on December 9, 2014, as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2004 | $294,454 | $58,491 |
| 2005 | 170,701 | 34,140 |

Petitioner and Mr. Briley appealed the Court's decision to the Court of

Appeals for the Fourth Circuit.  On November 23, 2015, the Court of Appeals

vacated this Court's decision, finding that the petition filed in the Tax Court was

untimely, and remanded the case to the Court with instructions to dismiss the

petition for lack of jurisdiction.  We vacated our decision and dismissed the case

for lack of jurisdiction on February 10, 2016.

Pursuant to the dismissal of the case, respondent assessed the following

deficiencies in income tax and penalties against petitioner and Mr. Briley:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2004 | $622,512 | $124,502 |
| 2005 | 287,581 | 57,516 |

[*8] IV.    Petitioner and Mr. Briley's Divorce Proceedings

As the underlying case proceeded through this Court, Mr. Briley assaulted two police officers and was sentenced to six years in prison. In 2014 petitioner separated from Mr. Briley and initiated divorce proceedings. At an unspecified time before February 19, 2014, a property settlement agreement (property settlement) was drafted. With respect to the marital assets, the property settlement provided that "[t]he Wife agrees to relinquish any and all claim, title and interest in the Husband's stock ownership of Briley Builders, Inc., and J.B.B. Enterprises, Inc., both Virginia corporations, in which he is the 100% stockholder." The settlement agreement disposed of the marital home as follows:

> The parties own * * * [the marital residence] as tenants by the entirety. The property is subject to a first and second deed of trust and may be subject to further tax liens from the IRS arising from liability for unpaid income taxes from 2003-2005 and 2009-2011. The Husband agrees to convey all of his right, title and interest in the property through his execution and delivery of a Quit Claim Deed of even date with the date of this Agreement. The Wife shall have the sole right to live in this property from the date of this Agreement. She shall continue to be solely responsible for the payment of all of the mortgage payment, real estate taxes, insurance and maintenance expenses. The Husband hereby relinquishes all of his title and interest in said property arising from his marital status as the Husband. She [the Wife] further indemnifies the Husband for any and all liability arising under the First and Second Deeds of Trust secured against this property.

The property settlement did not mention petitioner's father-in-law's deed of trust.

**[\*9]**  Mr. Briley signed the property settlement before a notary public on February 19, 2014.  On the same date, Mr. Briley signed and had notarized a quitclaim deed conveying the marital home to petitioner.  Petitioner did not sign the property settlement; it remained unexecuted as of the date of trial.

The property settlement and the quitclaim deed state that the transfer of the marital home was a result of the divorce proceedings.  However, petitioner introduced a document stating that the marital home was transferred to her as a result of a lawsuit by the two police officers whom Mr. Briley had assaulted.  In a letter sent to the IRS as part of petitioner's request for innocent spouse relief, petitioner's attorney, Mr. Cate, stated:

> In 2012 Mr. Briley was incarcerated after being convicted of assaulting a police officer and was sentenced to six years in prison.  Mrs. Briley sought legal counsel to obtain a divorce.  However, because her limited funds caused by the loss of her husband's income Mrs. Briley was unable to go forward with the divorce.  At the same time the injured police officer threatened to sue Mr. Briley for the damages he had sustained.  And because the only asset available to satisfy a judgment against Mr. Briley was the couple's home, her attorney advised Mrs. Briley to have title to the property transferred to her, which she did.  <u>It is important to note that this asset transfer was in no way a fraud on the IRS.  Mrs. Briley was still fully liable for taxes as a joint signatory on all tax returns and the real estate to which she now held exclusive title was just as exposed to IRS collection efforts as it was before the transfer.</u>  In fact, since no lien had been filed, the transfer actually protected the interest of the IRS over a potential superior judgment lien in favor of the police officer.

[*10] When asked about the discrepancy as to the reason the marital residence was transferred, petitioner stated that Mr. Cate "must have misunderstood what I was explaining to him." Ultimately Mr. Briley's liability insurance carrier paid the judgment obtained by the injured police officers.

V.     Petitioner's Innocent Spouse Request

On March 25, 2016, respondent received petitioner's timely filed Form 8857, Request for Innocent Spouse Relief, for 2004, 2005, and 2009 through 2011. Attached to Form 8857 was a letter drafted by Mr. Cate explaining petitioner's request.

On April 22, 2016, petitioner submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, wherein she stated that her house's current market value was $911,862, there were current loans outstanding of $419,794, and her equity in the house was $492,068. Petitioner submitted a second Form 433-A on May 12, 2017, wherein she stated that the house's current market value was $882,000 and there were current loans outstanding of $767,750. Because of the formula used by Form 433-A, petitioner was deemed to have no equity in the home.[3] Petitioner was unable to explain the

_____

[3]In calculating the values of personal assets, Form 433-A directs the filer to enter an asset's current market value, multiply that amount by 0.8, and then

(continued...)

[*11] discrepancy between the two Forms 433-A, nor did she claim any change in circumstances between the filing dates of the two forms. Nor did she address the fact that neither Form 433-A reflected the amounts evidenced in the two bank loans and the deed of trust. See supra pp. 3-4.

On February 1, 2017, respondent issued a final determination denying petitioner relief under section 6015(b), (c), and (f). The determination letter stated that it would not be unfair to hold petitioner liable for the understatement of tax on the joint 2004 and 2005 income tax returns because petitioner knew, or had reason to know, of the items causing the tax debt.

OPINION

I.      Introduction to Relief From Joint and Several Liability

In general, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the tax return. Sec. 6013(d)(3). But, under limited circumstances set forth in section 6015, a spouse who has made a joint return may elect to seek relief from joint and several

---

[3](...continued)
subtract the outstanding loan balance to establish the asset's total value. Thus, petitioner entered the market value of the home, $882,000, and multiplied that amount by 0.8, resulting in a product of $705,600. Subtracting the loan balance of $767,750 resulted in a value of −$62,150. Pursuant to the form's instructions, petitioner reported her equity in the home as zero.

**[*12]** liability. Petitioner seeks such spousal relief under subsections (b) and (f) of section 6015.

## II.    Section 6015(b) Relief

### A.    Introduction

Section 6015(b)(1) provides that a taxpayer will be relieved of liability for an understatement of tax if: (A) a joint return was made for the taxable year in question; (B) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (C) the requesting spouse "establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement"; (D) taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement; and (E) the requesting spouse elects to invoke the benefits of subsection (b) within two years after the date the Secretary has begun collection actions with respect to the requesting spouse.

The requirements of section 6015(b)(1) are conjunctive; failure to satisfy any one precludes relief. Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004). And the requesting spouse bears the burden of proving entitlement to section 6015(b) relief. Id. at 311.

[*13] Respondent concedes that petitioner satisfies the requirements of section 6015(b)(1)(A), (B), and (E) (petitioner and Mr. Briley filed joint tax returns for the years involved, the understatements are attributable to Mr. Briley, and she sought relief within the two-year collection limitations period) but asserts that she does not meet the requirements of subparagraphs (C) (the requesting spouse must establish that he/she did not know, and had no reason to know, of the understatement of tax on the returns[4]) and (D) (it would be inequitable to hold the requesting spouse liable for the deficiency).

### B.    Section 6015(b)(1)(C) Reason To Know

Section 6015(b)(1)(C) requires that the spouse requesting relief must establish that he/she did not know and had no reason to know of the understatement of tax on the return.  "A taxpayer who signs a return is generally charged with constructive knowledge of its contents.  In establishing that a taxpayer had no reason to know, the taxpayer must show that she was unaware of the circumstances that gave rise to the error and not merely unaware of the tax consequences.  Section 6015 does not protect a spouse who turns a blind eye to

---

[4]"The requirement in section 6015(b)(1)(C) * * * is virtually identical to the same requirement of former section 6013(e)(1)(C); therefore, cases interpreting former section 6013(e) remain instructive to our analysis." Doyel v. Commissioner, T.C. Memo. 2004-35, 2004 WL 238022, at *8.

[*14] facts readily available to her."  Porter v. Commissioner, 132 T.C. 203, 211-212 (2009) (citations omitted).

"An individual has reason to know of the understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the understatement."  Hopkins v. Commissioner, 121 T.C. 73, 77 (2003); see sec. 1.6015-2(c), Income Tax Regs.  Consequently, the requesting spouse has a "duty of inquiry" with respect to the income tax return filed.  Butler v. Commissioner, 114 T.C. 276, 283-284 (2000), abrogated on other grounds by Porter v. Commissioner, 132 T.C. 203.  The duty of inquiry is subjective, focusing on the individual seeking relief.  Id. at 284; Smith v. Commissioner, T.C. Memo. 2009-237.  Factors to be considered in making this determination are:  (1) the requesting spouse's level of education; (2) the requesting spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances.  See Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), aff'g T.C. Memo. 1992-228; Butler v. Commissioner, 114 T.C. at 284.

[*15] We believe petitioner had reason to know of the understatement of tax on her and Mr. Briley's joint Form 1040 for each of the years involved. Petitioner was college educated. Even a cursory review of each year's tax return would have revealed that the return reported a large negative income and caused a reasonably prudent individual in the shoes of petitioner to question the accuracy of the negative income.

Admittedly, much of the negative income in 2004 and 2005 arises from NOL carryforwards, and petitioner does not have a financial education. See Wang v. Commissioner, T.C. Memo. 2014-206 at *20 (citing Greer v. Commissioner, 595 F.3d 338, 348, (6th Cir. 2010), aff'g T.C. Memo. 2009-20). But having a sophisticated financial education is not necessary to understand petitioner's and Mr. Briley's joint tax returns.

Petitioner testified she was sure Briley Builders made money from 2003 through 2008, including each of the years involved. Yet in 2003 Briley Builders reported a large loss, resulting in petitioner's and Mr. Briley's joint 2003 Form 1040 reporting an income of –$784,923. As a "reasonably prudent taxpayer", petitioner had a duty to question Mr. Briley or Mr. Shaft as to how an ostensibly profitable company such as Briley Builders could lose so much money. See Reser v. Commissioner, 112 F.3d 1258, 1267-1268 (5th Cir. 1997) ("Tax returns setting

**[\*16]** forth 'dramatic deductions' will generally put a reasonable taxpayer on notice that further investigation is warranted."), aff'g in part, rev'g in part T.C. Memo. 1995-572; Levin v. Commissioner, T.C. Memo. 1987-67 (explaining that the spouse requesting relief had a duty to inquire about large deductions reported on the face of the joint tax return and could not escape her responsibilities by ignoring the contents of the return when signing). Aside from petitioner's testimony that Mr. Briley misrepresented her ownership interest and position as an officer in Briley Builders, there is nothing in the record to indicate that Mr. Briley was deceitful or evasive with respect to his and petitioner's personal finances. Thus, petitioner cannot escape her responsibility to be informed of the contents of the joint tax return. Consequently, we find that petitioner had reason to know of the understatements on each of the returns for the years involved within the meaning of section 6015(b)(1)(c). We thus hold that petitioner is not entitled to the requested relief from joint and several liability under section 6015(b).

III.   Section 6015(f) Equitable Relief

Section 6015(f) provides equitable relief under procedures prescribed by the Secretary if: (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency and (2) relief is not available to the requesting spouse under subsection (b) or (c). The

**[\*17]** requesting spouse has the burden of proving that he/she is entitled to relief. Alt v. Commissioner, 119 T.C. at 311.  We apply a de novo scope and standard of review in reviewing the requesting spouse's prayer for relief.  Porter v. Commissioner, 132 T.C. at 210.

The Commissioner published Rev. Proc. 2013-34, 2013-43 I.R.B. 397, outlining factors the IRS normally considers in deciding whether section 6015(f) relief should be granted.[5]  Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. at 399-403, sets forth a three-step procedure to be followed by the IRS in evaluating spousal requests for relief:  (1) section 4.01 lists seven threshold conditions which must be met, (2) section 4.02 lists circumstances in which the IRS will make streamlined relief determinations, and (3) section 4.03 sets forth nonexclusive factors that the IRS will consider in determining whether equitable relief should be granted because it would be inequitable to hold a requesting spouse jointly and severally liable.

---

[5]While this Court is not bound by IRS revenue procedures, we often look to them for guidance.  Hollimon v. Commissioner, T.C. Memo. 2015-157, at \*7-\*8; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

**[*18]** A.     <u>Threshold Conditions</u>

The first step of the three-step procedure consists of seven threshold conditions found in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399, that must be met:

(1) the requesting spouse filed a joint return for the taxable year for which he/she seeks relief;

(2) relief is not available under section 6015(b) or (c);

(3) the claim is timely filed;

(4) no assets were fraudulently transferred between the spouses;

(5) the nonrequesting spouse did not transfer "disqualified assets", as that term is defined by section 6015(c)(4)(B), to the requesting spouse. If the nonrequesting spouse did transfer such a disqualified asset, relief is only available to the extent the income tax liability exceeds the value of the disqualified assets;

(6) no knowledge of the filing of a fraudulent return; and

(7) liability is attributable, in full or in part, to an item of the nonrequesting spouse. If the liability is partially attributable to the requesting spouse, then relief can only be considered for the portion of the liability attributable to the nonrequesting spouse. Nonetheless, the IRS will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attributable, in full or in part, to the requesting spouse if any of the following exceptions apply:

(a) attribution solely due to the operation of community property law;

(b) nominal ownership by the requesting spouse;

**[*19]**     (c) misappropriation of funds by the nonrequesting spouse;

(d) abuse of the requesting spouse by the nonrequesting spouse which prevented him/her from challenging the treatment of any items on the return or questioning the payment of any balance due reported on the return; or

(e) fraud committed by the nonrequesting spouse.

Respondent asserts that petitioner fails to meet condition (4) (no fraudulent transfer of assets) and condition (5) (no transfer of disqualified assets).

### 1.     Fraudulent Transfer

On brief respondent states that "the transfer of an asset with the intention of avoiding tax, qualifies as an asset that was transferred as part of a fraudulent scheme." Respondent thus implies that Mr. Briley and petitioner transferred the marital home with the intention of defrauding the IRS.

Section 1.6015-1(d), Income Tax Regs., provides that a "fraudulent scheme includes a scheme to defraud the Service or another third party". And we have previously found a fraudulent scheme exists when spouses transfer property with the intent to hide the transfer. See Chen v. Commissioner, T.C. Memo. 2006-160, 2006 WL 2270407, at *5.

But the record in this case contains no evidence to support a position that petitioner concealed from or misrepresented to the IRS facts concerning the

[*20] transfer of the marital home from the IRS. See Spies v. United States, 317 U.S. 492, 499 (1943); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Hence, on the basis of the record in this case, with regard to petitioner's eligibility for spousal relief under section 6015(f), we hold that assets were not fraudulently transferred between spouses (condition (4)).

### 2. Disqualified Assets

Section 6015(c)(4)(B)(i) defines a disqualified asset, in general, to be: "[A]ny property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax." Section 6015(c)(4)(B)(ii)(I) provides the following presumption with respect to classifying assets as disqualified:

> For purposes of clause (i), except as provided in subclause (II) any transfer which is made after the date which is 1 year before the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or payment of tax.

Section 6015(c)(4)(B)(ii)(II) provides: "Subclause (I) shall not apply to any transfer pursuant to a decree of divorce or separate maintenance or a written instrument incident to such a decree or to any transfer which an individual

**[*21]** establishes did not have as its principal purpose the avoidance of tax or payment of tax."

We agree with respondent's assertion that the marital home constitutes a disqualified asset. In this regard we are mindful that the quitclaim deed transferring the property to petitioner from Mr. Briley was entered into on February 19, 2014, well after respondent issued the notice of deficiency in the underlying matter.

Petitioner has not demonstrated that she falls under the exception of section 6015(c)(4)(B)(ii)(II). As of the date of trial petitioner remained married to Mr. Briley; hence there is no divorce decree. Petitioner provided the Court with the February 19, 2014, property settlement between her and Mr. Briley, but she never signed it.

Petitioner alleges that she had valid, nontax purposes for the transfer of the marital home, but her credibility in this regard is eroded by her shifting statements. Petitioner introduced a letter from her divorce attorney, Mr. Scholar, stating that the deed transferring the marital home to her was filed pursuant to the terms of an unexecuted property settlement. But on the basis of the statements in Mr. Cate's letter to the IRS that the marital home was transferred to petitioner to protect the home from judgment in a lawsuit against Mr. Briley related to his assault case, we

[*22] question the veracity of the statements made in Mr. Scholar's letter. Moreover, we are concerned by the shifting value of the marital home reported on the Forms 433-A petitioner submitted to the IRS, which affects the question of whether the income tax liability exceeded the value of the home, and if so, to what extent. And finally we are skeptical as to the bona fides of the alleged note giving rise to the lien against the house set forth in petitioner's father-in-law's deed of trust. In sum, we hold that condition 5 (no transfer of disqualified assets occurred) was not met.

## B.   Equitable Relief Factors

Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400, provides a list of nonexclusive factors to be weighed by the Commissioner in making a decision. They include (a) marital status (i.e., do the spouses remain together?), (b) economic hardship, (c) knowledge or reason to know of the understatement by the requesting spouse, (d) legal obligation arising from a divorce decree or other binding agreement, (e) significant benefit gained by the requesting spouse, (f) compliance with income tax laws, and (g) mental or physical health at the time of filing the request for relief. No single factor is determinative, and all factors are considered and weighted appropriately. Kellam v. Commissioner, T.C. Memo. 2013-186, at *26.

[*23] The parties agree that factors (a), (b), (d), and (g) are neutral. Accordingly, we limit our inquiry to factors (c) knowledge or reason to know of the understatement by the requesting spouse, (e) significant benefit gained by the requesting spouse, and (f) compliance with income tax laws.

### 1. Knowledge or Reason To Know

Under this factor we examine whether the requesting spouse knew or had reason to know that there was an understatement or deficiency on the joint income tax return, or knew or had reason to know that the nonrequesting spouse would not or could not pay a reported but unpaid tax liability.[6] See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. The factors enunciated in the revenue procedure are essentially the same as those relied upon by section 6015(b)(1)(C). As discussed supra pp. 13-16, petitioner had reason to know of the understatements of tax. This factor weighs against relief.

### 2. Significant Benefit

Under this factor we consider whether the requesting spouse received a significant benefit, beyond normal support, from not paying the unpaid income tax liability. Rev. Proc. 2013-34, sec. 4.03(2)(e), 2013-43 I.R.B. at 402. Normal

---

[6]There was no underpayment of tax reported on the joint return for either of the years involved.

[*24] support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. This factor will weigh in favor of relief only if the nonrequesting spouse significantly benefited from not paying the unpaid tax or understatement and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Id. As examples, the revenue procedure points to lavish lifestyles, such as owning luxury assets and taking expensive vacations. Respondent presented no evidence of such exorbitant spending, and we do not believe that this factor tilts one way or the other in favor of granting or denying relief. We therefore accept petitioner's invitation to consider this factor neutral.

### 3. Compliance With Income Tax Laws

Because petitioner remained married to Mr. Briley and filed separate returns after the years involved, we consider whether she was in compliance with the tax laws for tax years after 2005. See Rev. Proc. 2013-34, sec. 4.03(2)(f)(iii), 2013-43 I.R.B. at 403. Petitioner failed to file an income tax return with respect to 2016. Petitioner offers no explanation as to why she failed to file a tax return for that year. This factor weighs against relief.

**[*25]** C.    <u>Conclusion</u>

After considering all of the facts and circumstances, we find two factors weighing against relief with the remaining factors neutral.  We thus conclude that it would not be inequitable to hold petitioner liable for the payment of tax in this matter.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.